**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

CITY TRUST INVESTMENTS, LLC,

Debtor.
_________________________________/

Case No.: 24-14100-LMI
Chapter 7

**CHAPTER 7 TRUSTEE'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM FLORIDA TITLE WORXS, LLC AND APPEARANCE AT A CONTINUED RULE 2004 EXAMINATION, AND MOTION FOR SANCTIONS**

MARCIA T. DUNN, solely as the duly appointed Chapter 7 Trustee (the "Trustee") of the above-referenced bankruptcy estate (the "Estate"), by and through her undersigned counsel, seeks entry of an order compelling Florida Title Worxs, LLC (the "FTW") to produce all documents responsive to the *Trustee's Second Amended Notice of Rule 2004 Examination Duces Tecum of Florida Title Worxs, LLC and Intent to Serve Subpoena* (the "Second Amended Notice") [D.E. 213] and appear for a continued Rule 2004 examination, and moves for sanctions, and in support thereof, states as follows:

## JURISDICTION

1. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A).

2. Venue is proper in this District pursuant to 28 U.S.C. § 1409.

## BACKGROUND

2. On April 26, 2024 (the "Petition Date"), City Trust Investments LLC (the "City Trust" or "Debtor") commenced the bankruptcy case with the filing of a voluntary petition for relief under Chapter 11, Title 11 of the United States Bankruptcy Code in this Court.

3. The initial Chapter 11 meeting of creditors was held on May 30, 2024.

4. As of the Petition Date, City Trust was the title owner of eight real properties, each of which was encumbered with a mortgage.

5. FTW was the title closing agent for each of the mortgage loans resulting in the encumbrance of the Debtor's properties and also served in that role in earlier transactions involving the same properties.

6. FTW served the same role for closings on loans for which certain known affiliates of the Debtor, namely Loreta Investments, LLC, Gain 11 Investments, LLC, 14445 SW 289 ST LLC, and B&B Homestead Investments Group LLC, were borrowers.

7. FTW's sole member, Elizabeth Diaz Valdez, conducted the closings on behalf of FTW, notarized signatures, sometimes witnessed signatures, and disbursed millions of dollars in loan proceeds to parties other than the borrower entities.

8. Mirian and Hector Serrano have alleged in state court proceedings that Ms. Diaz Valdex notarized deeds without Mirian and Hector Serrano being present when their signatures were affixed or that she notarized documents signed by someone other than them without their consent.

9. On August 5, 2024, the Office of the United States Trustee (the "UST") filed a Motion to Dismiss or Convert Case and, on August 19, 2024, Creditors Hector S. Serrano and Mirian Serrano filed a Motion to Convert Case to Chapter 7.

10. On August 30, 2024, the Court entered an Order Granting Creditors' Motion to Convert Case to Chapter 7, and on September 3, 2024, the Court entered an Order Granting the UST's Motion to Convert Case to Chapter 7.

11. On September 3, 2024, Marcia T. Dunn was appointed as the Chapter 7 Trustee of City Trust's bankruptcy estate (the "Estate").

12. On January 2, 2025, the Trustee issued her *Notice of Rule 2004 Examination Duces Tecum of Duces Tecum of The Florida Title Worxs, LLC and Intent to Serve Subpoena* [D.E. 197] (the "Notice"), whereby responsive documents and information were due on January 9, 2025 and FTW was to appear for examination on January 16, 2025.

13. Ms. Diaz Valdez emailed Trustee's counsel on January 8, 2025 requesting an extension of time to produce documents and an adjournment of FTW's examination.

14. Ms. Diaz Valdez requested, and the Trustee consented, to extend the deadline for production to and through January 17, 2023.

15. No objection was ever made to the demand contained in the Notice.

16. On January 16, 2025, the Trustee filed her *Amended Notice of Rule 2004 Examination Duces Tecum of Duces Tecum of The Florida Title Worxs, LLC and Intent to Serve Subpoena* [D.E. 209] (the "Amended Notice"), which reset the production deadline for January 17, 2023 and scheduled the examination for January 23, 2025.

17. On January 17, 2024, FTW produced 11 pdf files via seven emails, which pertained to only 10 transactions involving the Debtor or its Affiliates (as defined in the Notice).

18. On January 21, 2025, Boyd Richards Parker & Colonnelli, P.L. contacted Trustee's counsel to advise that it had been retained by the insurance carrier for FTW to defend the Rule 2004 examination. At the time, the engagement partner on the matter, Manuel Cassabielle, reported he was actually engaged on another matter on the January 23, 2025 examination date and requested that it be continued.

19. On January 22, 2025, Trustee's counsel met and conferred with Mr. Cassabielle's office concerning the deficiencies in FTW's production of documents and rescheduling the examination to January 31, 2025.

20. Consequently, on January 22, 2025, the Trustee filed her *Second Amended Notice of Rule 2004 Examination Duces Tecum of Duces Tecum of The Florida Title Worxs, LLC and Intent to Serve Subpoena* [D.E. 213] (the "Second Amended Notice"), which scheduled the examination for January 31, 2025.

21. On January 23, 2025, Trustee's counsel met and conferred by telephone with Jorge Castillo Cuevas, an attorney with counsel to FTW, concerning the deficiencies in FTW's production. Following the call, Trustee's counsel shared the limited production made by FTW directly with its counsel via email, in which Trustee's counsel stated:

> Per our call and in furtherance of our efforts to address the deficiencies in the document production, I am attaching the original notice and subpoena and the recent notice and subpoena rescheduling the examination to next Friday.
>
> I have also attached your client's transmittal letter and the production comprised of ten pdf files.
>
> While the documents Ms. Diaz/Florida Title produced are responsive, they are incomplete.
>
> Florida Title Worx has not produced the same documents as to eight properties identified in the Trustee's subpoena, any communications relating to the transactions for which productions were made, other transactions involving the same properties, additional transactions involving City Trust, Loreta Investments, 14445 SW 289 St, or their insiders, and the transactions at issue in the numerous pending litigations.
>
> It is my understanding that the currently pending matters include, but are not necessarily limited to,
> Serrano v Loreta (2024-004572-CA-010)
> MCC Group v Loreta (2023-024647-CA-01)
> Sunny Monday v Loreta (2023-022632-CA-01)
> Les Dauphines v 14445 SW 289 St (2023-024239-CA-01)
> Halperin v Loreta (2023-022836-CA-01)
> Feldman v Loreta (2023-025901-CA-01)
> Belwai v 14445 SW 289 St (2023-02468-CA-01)
> Herra v Loreta (2023-024257-CA-01)
> Sun 1318 Corp v Loreta (2023-02406-CA-01)
> Gonzalez v Llaguno (2023-004951-CA-01)

> As to those documents produced, some are missing supporting bank records and the wire transmittal instructions. All are missing communications relating to the transactions and any written instructions concerning the disposition of loan proceeds.
>
> I also note that the settlement statement relating to the October 2022 refinance closing on 28152 SW 14nd Street included a $135,900 check issued to Florida Title, which was described as a ledger transfer in the disbursement log, but no additional documentation has been provided as to the disposition of these funds.
>
> I will separately email you some mortgages relating to the properties identified in the subpoena for which the Trustee believes Florida Title acted as closing agent such that similarly documents should be available.
>
> I look forward to your rolling production starting early next week with an eye toward completion by the end of the day on Wednesday.

22. That same afternoon, Trustee's counsel emailed FTW's counsel copies of 13 mortgages that encumbered or formerly encumbered properties titled in the name of the Debtor for which the Trustee believed FTW acted as the title closer.

23. On January 29, 2025, counsel to FTW made a supplemental production of ten (10) pdf files, comprised of two loan payoffs, five satisfactions of mortgage, and three pds with contents similar to the initial production.

24. Ms. Diaz Valdez appeared on behalf of FTW for the examination on January 31, 2025 (the "Examination").

25. Ms. Diaz Valdez testified at the Examination, among other things:

a. FTW provided services to the Debtor;

b. FTW provided services to Gain 11 Investments LLC on at least one occasion;

c. FTW provided services to Loreta Investments LLC;

d. FTW provided services to 14445 SW 289 ST LLC;

e. She introduced some of the insiders and their entities to hard money lenders;

f. She commonly disbursed proceeds to individual insiders rather than the borrower entities, including City Trust;

g. She received commissions, usually 1% of the loan amount, on those transactions where she made the introduction of the borrower to the lender and the loan closed; and

h. On occasion she or her husband made short-term loans to Lazara Llaguno that were directly repaid from the proceeds of a loan for which an entity was a borrower.

26. Ms. Diaz Valdez testified that authorities seized her physical files as part of a criminal investigation.

27. She testified that FTW would open a file following a communication from counsel for a lender, typically via email. She would create or obtain the following between opening the file and closing on the loan: "The commitment, the CPL, the closing statement, insurance, a lien search."

28. Ms. Diaz Valdez confirmed the lien search was obtained electronically.

29. When asked whether she looked for electronic copies of the documents sought in the Notice, Ms. Diaz Valdez stated, "I would need like a long time to do that, because I would have to research e-mails and go back through years of documents, so I provided what I had."

30. When asked if she had searched the email used exclusively for FTW's business during the relevant period for responsive documents, Ms. Diaz Valdez responded that she did not have enough time to do so. She acknowledged that she had emails that "I need to research."

31. When asked how she found the documents she initially produced on January 17, 2025, she responded that she researched her email for final closing HUDs, found her file number,

looked up the transaction in her escrow software, generated a ledger from the escrow software, and compiled excerpts of bank records reflecting the disbursement of loan proceeds. She then created a pdf for each if nine (9) transactions containing the HUD closing statement, escrow ledger report, and excerpt of bank statements.

32. She testified that she searched exclusively using property addresses and did not search for any of the entities or individuals identified in the Notice.

33. She did not know whether her escrow software permitted searches using terms other than the file number.

34. Ms. Diaz Valdez testified she did not review the escrow bank records to identify transactions responsive to the Notice other than to reconcile the selection transactions with the escrow ledger.

35. She also testified that she was under the misconception that she should only search for the eight properties owned by the Debtor listed in the Notice notwithstanding the Notice's broader instructions and demands.

36. She further testified that she had decided to only locate and produce records relating to transactions where the mortgage loans were still outstanding, notwithstanding that the Notice did not limit the scope of mortgage loans outstanding as of the Petition Date.

37. She acknowledged that she failed to undertake the research process she described as to earlier loans against the Debtor-owned properties.

38. As a result of the acknowledged failures to comply with the Second Amended Notice, the Examination was continued pending further production by FTW.

39. On February 13, 2025, Trustee's counsel met and conferred by phone with Sharhonda Robinson-Edwards, counsel to FTW.

40. The following day, Trustee's counsel emailed a copy of the Notice to Ms. Robinson-Edwards and stated, "Per our discussion, ask [Ms. Diaz Valdez] to search each using for responsive documents and communications relating to the individuals, entities and properties identified in the subpoena."

41. On February 20, 2025, Trustee's counsel emailed Ms. Robinson-Edwards to confirm she had conferred with FTW in the hope that the balance of the documents would be produced the following week and the deposition completed within two (2) weeks.

42. On February 21, 2025, Ms. Robinson-Edwards confirmed she had spoken with Ms. Diaz Valdez and requested that counsel have a call.

43. Trustee's counsel and Ms. Robinson-Edwards spoke on February 26, 2025. Shortly afterwards, Trustee's counsel emailed a list identifying state court litigation involving the Debtor, Loreta Investments, LLC, Gain 11 Investments, LLC, and 14445 SW 289 ST LLC. That list included the name of the entity that owned the property, each property address, and the corresponding state court litigation name and case number.

44. Due to a lack of production by FTW in over 30 days since the Examination, on March 4, 2025, Trustee's counsel inquired with Ms. Robinson-Edwards about the status of production and advised that the Trustee intended to move to compel absent a meaningful production by the end of that week.

45. Ms. Robinson-Edwards responded by email on March 5, 2025, "My client is making progress in her search but as previously mentioned, the searches we discussed were not as simple as we thought and are actually very time consuming. I will be working to provide updates responses this week."

46. On March 7, 2025, Trustee's counsel responded, "Thank you for the update, however it does not reflect any demonstrable progress as nothing new has been produced since the initial examination. FTW and Ms. Valdez have until the end of the day on Monday (March 10) in which to supplement their production."

47. No documents were produced on or before March 10, 2025.

48. On March 11, 2025, Trustee's counsel received a voicemail from Ms. Robinson-Edwards stating, in part, ". . . I am working on this right now. And as soon as I have this together, I will send over the supplemental documents and then there'll probably be a second supplement because I believe there's additional documents she's still looking for."

49. No such production has been made.

50. FTW has failed to produce any additional documents since January 29, 2025, notwithstanding the extensive efforts of Trustee's counsel to meet and confer.

51. Further, Fed. R. Bankr. P. 2004 provides in relevant part:

> (a) Examination on Motion. On motion of any party in interest, the court may order the examination of any entity.
>
> (b) Scope of Examination. The examination of an entity under this rule … may relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge. In … a reorganization case under chapter 11 of the Code, … the examination may also relate to the operation of any business and the desirability of its continuance, the source of any money or property acquired or to be acquired by the debtor for the purposes of consummating a plan and the consideration given or offered therefore, and any other matter relevant to the case or to the formulation of a plan.
>
> (c) Compelling Attendance and Production of Documentary Evidence. The attendance of an entity for examination and for the production of documents … may be compelled as provided in Rule 9016 for the attendance of a witness at a hearing or trial.

Fed. R. Bankr. P. 2004.

52. Fed. R. Bankr. P. 2004 allows the Trustee to go on a general fishing expedition so long as the information sought relates to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate...." *In re MMH Auto. Group, LLC,* 346 B.R. 229, 233 (Bankr. S.D. Fla. 2006) (citing *In re Wilcher*, 56 B.R. 428 (Bankr.N.D.Ill.1985)).

53. The Trustee is not fishing here, as evidenced by the declaration filed in support of the Trustee's motion seeking to substantively consolidate certain non-debtor entities.

54. The documents requested above are straightforward and, more importantly, squarely within the scope of Fed. R. Bankr. P. 2004. The Trustee requires such documents to administer the Debtor's bankruptcy case.

55. Local Rule 2004-1(B) provides that request for production of documents may be construed as a request under Bankruptcy Rule 7034.

56. The Trustee seeks entry of an order compelling the Witness to produce all documents and information responsive to the Trustee's Notice within ten (10) days of an order granting this Motion and to appear for a continued Rule 2004 examination within ten (10) days thereafter.

**REQUEST FOR SANCTIONS**

57. In addition to an order compelling the production of documents, FTW, should be required to reimburse the Trustee for her reasonable attorneys' fees and costs in connection with this Motion pursuant to Fed. R. Civ. P. 37(a)(5)(A) (applicable pursuant to Fed. R. Bankr. P. 7037). The persistent disregard by FTW of its obligations under the Notice make an award of attorney's fees appropriate and just. Upon a finding of entitlement, the Trustee will file an affidavit of attorneys' fees and costs.

**MEET AND CONFER**

58. Pursuant to Local Rule 7026-1(F), undersigned counsel certifies that prior to the filing of this Motion he made extensive efforts to confer with counsel to FTW regarding the outstanding discovery issues described herein, has received no additional documents, and is unable to resolve the matter without Court intervention.

**WHEREFORE**, the Trustee respectfully requests this Honorable Court enter an order: (1) granting the Trustee's Motion; (2) directing Florida Title Worxs, LLC to produce the requested information and documentation sought by the Trustee pursuant to the *Trustee's Second Amended Notice of Rule 2004 Examination Duces Tecum of Florida Title Worxs, LLC and Intent to Serve Subpoena* within ten (10) days of an order; (3) directing Florida Title Worxs, LLC to appear for a continued Rule 2004 examination within ten (10) days of the production; (4) entering sanctions in the form of attorney's fees against Florida Title Worxs, LLC; and (5) granting such other and further relief as this Court deems just and proper.

Respectfully submitted this 26th day of March, 2025.

**DUNN LAW, P.A.**
*Counsel for Marcia T. Dunn, as Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Tel: 786-433-3866
Fax: 786-260-0269
dblansky@dunnlawpa.com

By: */s/ David A. Blansky*
David A. Blansky, Esq.
Florida Bar No. 1033002

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 26, 2025, a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) upon all registered users in this case.

By: */s/ David A. Blansky*
David A. Blansky, Esq.
Florida Bar No. 1033002