**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re: Case No. 24-14100-LMI
Chapter 7

CITY TRUST INVESTMENTS LLC

Debtor.
_________________________________/

**TRUSTEE'S COMBINED RESPONSE TO JEFFREY MILLS, H2ML, LLC, AND POLONIO, LLC'S MOTION TO DISMISS CHAPTER 7 PETITION**

MARCIA T. DUNN, solely as Chapter 7 Trustee (the "Trustee") for the above-captioned bankruptcy estate (the "Estate"), by and through undersigned counsel, files this combined response (the "Response") to (i) *Secured Creditor, Polonio, LLC's Motion to Dismiss Chapter 7 Petition* [D.E. 312] the "Polonio MTD") and (ii) *Secured Creditor, Jeffrey Mills' and H2ML, LLC's Motion to Dismiss Chapter 7 Petition* [D.E. 314] (the "Mills & H2ML MTD") and together with the Polonio MTD, the "MTD").[1] In support of her Response, the Trustee states as follows:

## PRELIMINARY STATEMENT

1. The MTD presents nothing more than a lack of understanding of the fundamental and basic tenets of bankruptcy law. Almost *a year* after the Debtor's bankruptcy filing – and months after the Trustee has expended substantial time and resources administering the case – Polonio, LLC, H2ML, LLC, and Jeffrey Mills (collectively, the "Movants") seek dismissal of the case for four meritless reasons: (1) unreasonable delay; (2) bad faith/abuse; (3) no business to reorganize nor unsecured creditors who need protection; and (4) the Debtor has not retained

[1] The Polonio MTD and Mills & H2ML MTD are effectively copy-and-paste motions, and as such, a combined response is appropriate.

counsel and without the Debtor's participation, the proceeding is rendered moot. Candidly, the Trustee is perplexed by the MTD and arguments advanced therein.

2. Putting aside that the Movants have actively participated in the bankruptcy for nearly a year now and do not allege any new or changed circumstances, the Movants ignore entirely that the Trustee was appointed to administer the Debtor's case. The Trustee and her counsel are advancing the case forward and streamlining the myriad of issues present for the benefit of all parties-in-interest, including the Movants.

3. The Movants also ignore that certain parties dispute the Movants' interest in the Debtor's real properties altogether, with one party – Carlos Menendez ("Menendez") – filing an unsecured claim exceeding two million dollars. The Trustee is currently litigating Menendez's claims in a related adversary proceeding, whose outcome could ultimately benefit the Movants.

4. Finally, whether there is a business to reorganize is wholly irrelevant since the case is proceeding as a chapter 7 liquidation. To that end, the Trustee has taken the requisite steps to liquidate the Debtor's real properties including retaining a broker to market and sell the Debtor's real properties, which, again, could benefit the Movants.

5. The MTD forces the Trustee to question the Movants' intentions given that a dismissal of the bankruptcy to allow the Movants to continue their protracted litigation in state court would only increase their attorneys' fees to the detriment of all other parties in interest. It appears Movants simply want to race to the courthouse to enforce their rights, which is precisely what bankruptcy law is designed to avoid.[2]

[2] Notably, Polonio and H2ML twice before sought and were denied relief from the automatic stay to do what they are seeking to do through the MTD. *See* D.E. 114, 116, 168, and 169.

6. For these reasons and those discussed below, the MTD is a bad faith filing and should be denied. Furthermore, the Trustee requests sanctions in the form of attorney's fees and costs incurred in opposing the MTD pursuant to the Court's inherent authority and Fla. Stat. sections 57.105(1)(a) and (7)[3].

**RESPONSE**

**I. There has been no unreasonable delay in this case.**

7. The Movants claim – without any legitimate support – that dismissal is warranted because of unreasonable delay. *See* Mills & H2ML MTD, ¶¶ 12-16, Polonio MTD, ¶¶ 6-11. According to the Movants, the unreasonable delay purportedly stems from the case conversion, bankruptcy filing itself, and Debtor's "failure to participate." Mills & H2ML MTD, ¶ 16; Polonio MTD, ¶ 11. The Movants' arguments lack any support.

8. First, with respect to the conversion to chapter 7, the Movants did not file an objection to the *United States Trustee's Motion to Dismiss or Convert Case* (the "Motion to Convert"), which was served on counsel for the Movants on August 7, 2024. *See* D.E. 135. On

[3] Section 57.105(1)(a) states: "[u]pon the court's initiative or motion of any party, the court shall award a reasonable attorney's fee, including prejudgment interest, to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney on any claim or defense at any time during a civil proceeding or action in which the court finds that the losing party or the losing party's attorney knew or should have known that a claim or defense when initially presented to the court or at any time before trial [w]as not supported by the material facts necessary to establish the claim or defense." Fla. Stat. § 57.105(1)(a) (2025).

Section § 57.105(7) states: "[i]f a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract." Fla. Stat. § 57.105(7) (2025); *see also Page v. Deutsche Bank Trust Company Americas, et al.*, 308 So. 3d 953 (Fla. 2020). Here, the subject promissory notes contain the relevant attorney's fee provisions. *See, e.g.,* Promissory Note, a true and correct copy of which is attached hereto as **Exhibit A**, p. 2.

September 9, 2024, the case was converted to chapter 7. Now, seven months later and after the Trustee has spent substantial time and resources administering the case, the Movants mischaracterize the conversion as "unreasonable delay."[4]

9. *In re Profundity*, the single case the Movants cite to support its flawed assertion is inapplicable. In *Profundity*, Judge Lopez-Castro denied a creditor's motion to convert, finding that conversion would not be in the best interests of the estate or its creditors. *See In re Profundity*, 2024 WL 4249715, *2 (Bankr. S.D. Fla. 2024). Here, the Court expressly found conversion to be appropriate and in the best interests of creditors. *See* D.E. 144 ("The Court, therefore, find for the reasons explained on the record that converting the case to a case under chapter 7 is in the best interests of creditors.").

10. Second, it is unclear how the bankruptcy filing itself or the Debtor's failure to participate have created unreasonable delays in the bankruptcy. *See* Mills & H2ML MTD, ¶ 16; Polonio MTD, ¶ 11. On September 3, 2024, the UST's office appointed the Trustee as chapter 7 trustee of the estate. *See* D.E. 153. It is axiomatic that upon the appointment of a chapter 7 trustee, the trustee replaces the debtor-in-possession for the purposes of administering the estate and operating its business; "likewise, *the Trustee's attorney displaces the debtor's attorney*." *In re Patterson*, 2007 WL 7142509, *1 (Bankr. N.D. Ga. 2007) (emphasis added). The Debtor's lack of involvement or failure to retain an attorney, in light of the Trustee's appointment, cannot be deemed an unreasonable delay.

[4] Indeed, the only unreasonably delay thus far seems to be caused by the Movants and similarly situated creditors by failing to adequately produce documents in response to the Trustee's 2004 subpoenas and dragging their feet in scheduling related examinations (which the Movants insisted be scheduled over a month after the Trustee issued the subpoenas).

11. As a final note and as this Court is aware, the Trustee filed a *Motion to Decline Dismissal of Case* (the "Motion to Decline Dismissal") based on the Debtor's failure to secure new counsel. *See* D.E. 163. The Trustee served the Motion to Decline Dismissal on the Movants via CM/ECF on September 19, 2024. *Id.* The Movants did not respond or object. The Court granted the Motion to Decline Dismissal and ordered that "[t]he instant case shall not be subject to dismissal due to Debtor's failure to retain new counsel." D.E. 178.

**II. There is no indication of bad faith or abuse.**

12. Next, the Movants allege bad faith and/or abuse based on the factors identified in *In re Phoenix Piccadilly, Ltd* to support their dismissal request*. See* Mills & H2ML MTD, ¶¶ 17-21; Polonio MTD, ¶¶ 12-16. *Phoenix Piccadilly*, a case involving dismissal of a **chapter 11 case**, is not instructive for two main reasons:

a. First, the facts in *Phoenix Piccadilly* are distinguishable because the creditors in that case held legal title to the real property at issue under a deed of trust. *See In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1394 (11th Cir. 1988). Movants here concede that the Debtor holds legal title to the real properties at issue and claim the Movants have a mortgage secured by a lien on the real properties. *See* Mills & H2ML MTD, ¶¶ 2, 4; Polonio MTD, ¶ 4.

a. Second, and more importantly, *Phoenix Piccadilly* was superseded by statute when Congress amended section 362 of the Bankruptcy Code to include present-day section 362(d)(3) to address issues unique to single asset real estate cases. *In re TGP Communications, LLC*, 662 B.R. 795, n. 3 (Bankr. S.D. Fla. 2024). The present case is neither a chapter 11 reorganization nor a single asset real estate case.

13. Even assuming, *arguendo*, that that *Phoenix Piccadilly* factors applied, dismissal would still not be warranted: factor 1 does not apply because the Debtor has multiple real properties in which it holds legal title; factor 2 does not apply because the Debtor has several unsecured creditors with claims exceeding two million dollars; factor 5 does not apply because the Debtor's financial problems involve numerous issues with many parties that cannot be adequately resolved in a single state court action. And, unlike in *In re Joyce, Don & Associates*, which involved additional factors of bad faith including a principal of the debtor misrepresenting herself as an attorney, the debtor's transfer of property to an affiliate two days before the bankruptcy filing, and a lack of candor in another principal's testimony, additional bad faith factors are simply not present here. *See In re Joyce, Don & Associates Inc.*, 2008 WL 343265, *3 (Bankr. M.D. Fla. 2008).

14. Finally, with respect to timing (factor 6), this Court previously held that a chapter 7 bankruptcy filing aimed at thwarting a creditor's collection efforts is "not surprising, nor is it indicative of bad faith . . . ." *In re Kane & Kane*, 406 B.R. 163, 170 (Bankr. S.D. Fla. 2009). As articulated by Judge Kimball:

> [C]reditors complaining about a debtor's bad faith are able to argue that the debtor filed bankruptcy in response to just about any action they might take, whether it is filing suit, a motion for summary judgment, setting a matter for trial, following trial or judgment or following proceedings to enforce a judgment. Thus, whenever a debtor files it can stand condemned in creditors' eyes. The only way to avoid such criticism would be to file bankruptcy when creditors are not taking any action to collect their debts, and that hardly seems particularly useful.

*Id.* (internal citations omitted).[5]

[5] The Court should ignore the Movants' citation to *Albany Partners Ltd. v. Westbrook (In re Albany Partners, Ltd.)* because the written opinion from that case does not contain the language Movants inaccurately quote in their MTD.

## III. Movants' remaining arguments do not support dismissal.

15. In a final "everything but the kitchen sink" approach, the Movants urge dismissal because there is allegedly no business to reorganize, no unsecured creditors with claims to protect, and the Debtor is a corporate entity without legal representation. *See* Mills & H2ML MTD, ¶¶ 22, 25-27; Polonio MTD, ¶¶ 17, 20-22. Each of these meritless and confusing arguments cannot stand for the reasons briefed herein – namely, a reorganization is not possible in a chapter 7 case, there are unsecured creditors with substantial filed unsecured claims, and the Debtor's lack of participation is irrelevant in light of the Trustee's appointment.

WHEREFORE, the Trustee respectfully requests that the Court (i) deny the MTD, (ii) award attorney's fees incurred in opposing the MTD, and (iii) award any such further relief as the Court deems just and appropriate.

Dated: April 22, 2025

Respectfully submitted,

**DUNN LAW, P.A.**
*Counsel Marcia T. Dunn, Chapter 7 Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Phone: (786) 433-3866
Fax: (786) 260-0269
akapai@dunnlawpa.com

By: *<u>/s/ Amrit S. Kapai</u>*

Amrit S. Kapai, Esq.
Fla. Bar No. 1032794

**CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on this 22nd day of April, 2025, upon all registered users in this case.

By: *_/s/ Amrit S. Kapai_*
Amrit S. Kapai, Esq.
Fla. Bar No. 1032794

# EXHIBIT "A"

**Promissory Note**

09 17 22

# PROMISSORY NOTE

**September 13, 2022**
[Date]

**Homestead, Florida**
[City] [State]

**$130,000.00**
[Principal Amount]

**28124 SW 142nd Court, Homestead, FL 33033**
[Property Address]

**THIS NOTE IS A CONTRACT FOR A SHORT-TERM LOAN. THIS LOAN IS PAYABLE IN FULL AT MATURITY. SINCE YOU HAVE SELECTED A PAYMENT SCHEDULE WHICH WILL NOT PAY THE LOAN IN FULL BY THE MATURITY DATE, YOU WILL NEED TO PAY A LUMP SUM, OR BALLOON PAYMENT, WHICH WILL PAY OFF THE ENTIRE AMOUNT OF THE PRINCIPAL BALANCE OF THE LOAN AND ANY UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOUR INTEREST RATE AND TERMS WILL BE AT THE PREVAILING INTEREST RATE, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE ON THIS LOAN. YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

FOR VALUE RECEIVED, CITY TRUST INVESTMENTS LLC, a Florida limited liability company, whose address is 27581 South Dixie Hwy, Suite 2, Homestead, FL 33032 ("Maker"), promises to pay to the order of H2ML LLC, a Florida limited liability company, with offices at 2033 NE 14th Court, Fort Lauderdale, FL 33304 ("Lender"), the principal sum of One Hundred Thirty Thousand and 00/100 Dollars ($130,000.00) DOLLARS or such lesser sum as has been advanced hereunder in lawful money of the United States of America at the time of payment, together with interest from the date hereof, at the rate and on the terms set forth herein, as follows:

Prior to maturity, interest shall accrue on the whole of the principal balance remaining outstanding from time to time at a fixed rate of TWELVE and NO/100 (12.00%) percent per annum.

Maker shall pay monthly installments of interest only in arrears at the interest rate hereinabove set forth, without set-off or deduction, commencing on November 1, 2022, and continuing on the First (1st) day of each calendar month thereafter until and including October 1, 2023. The entire unpaid balance of principal of this Note and all interest accrued thereon and all other sums payable hereunder and under the Loan Documents shall be immediately due and payable in full on October 1, 2023 (the "Maturity Date").

Interest shall be calculated on a three hundred sixty (360) day year for the actual number of days elapsed in each calendar year by multiplying the actual number of days the debt is outstanding in each calendar year, by the rate of interest computed as aforesaid, and dividing the product thereof by three hundred sixty (360).

Maker shall have the right to prepay this Note, in whole or in part, at any time without penalty.

The principal and interest shall be payable at the office of Lender set forth in the heading hereof, or at such other place as Lender, from time to time, may designate in writing.

Payment of this Note is secured by a Mortgage of even date herewith, intended to be recorded forthwith, from CITY TRUST INVESTMENTS LLC, a Florida limited liability companyto Lender, secured upon certain premises situated in Miami-Dade County, State of Florida, together with the buildings and other improvements now or hereafter constructed thereon, more particularly described in the Mortgage (and herein referred to as the "Mortgaged Property").

In addition to the Mortgage, payment of this Note is secured by a first security interest in all furniture, fixtures, machinery and equipment owned by CITY TRUST INVESTMENTS LLC, a Florida limited liability company, located upon the Mortgaged Property and used in the operation of the Mortgaged Property and CITY TRUST INVESTMENTS LLC, a Florida limited liability company's business conducted therein, and certain other documents described in a commitment letter between Maker and Lender dated September 8, 2022. The Mortgage together with all the other documents evidencing and securing this loan, hereinafter collectively referred to as the "Loan Documents".

All of the agreements, conditions, covenants, provisions and stipulations contained in the Mortgage and the other Loan Documents which are to be kept and performed by Maker are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein, and Maker covenants and agrees to keep and perform them, or cause them to be kept and performed, strictly in accordance with their terms. Any default by Maker under any of the Loan Documents which remains uncured upon the expiration of any applicable grace and/or curative period provided for therein, may, at Lender's option, be treated as an event of default hereunder.

All payments shall be applied first to accrued interest and then to principal. If any installment of interest or principal and interest or any other payment is not paid within ten (10) days of the date when due under the terms of this Note, or of the Mortgage, then there shall also be immediately due and payable a late charge at the rate of five (5%) percent of such delinquent payment for each month of delinquency.

It is further understood, however, that should any default be made in the payment of any installment of principal or interest on the date on which it shall fall due, or in the performance of any of the agreements, conditions, covenants, provisions or stipulations contained in this Note, the Mortgage or any of the other Loan Documents, then Lender, at its option and without notice to Maker unless expressly required elsewhere herein, may declare immediately due and payable the entire unpaid balance of principal with interest accrued thereon at the then otherwise applicable rate specified hereinabove to the date of default and thereafter at a rate equal to the lesser of eighteen (18%) percent per annum or the highest rate allowable by law (which rate is hereinafter referred to as the "Default Rate") and all other sums due by Maker hereunder or under the Loan Documents, anything herein or in the Loan Documents to the contrary notwithstanding; and payment thereof may be enforced and recovered in whole or in part at any time by one or more of the remedies provided to Lender in this Note, the Mortgage or the Loan Documents. In such case, Lender may also recover all costs of suit and other expenses in connection therewith, together with a reasonable attorneys' fee (including in appeal or bankruptcy proceedings) for collection, together with interest on any judgment obtained by Lender at a rate which shall be equal to the Default Rate, including interest at that rate from and after the date of any execution, judicial or foreclosure sale until actual payment is made to Lender of the full amount due Lender. While in default, this Note shall bear interest at the Default Rate.

The failure of the Lender to exercise such option to accelerate the indebtedness evidenced hereby shall not constitute a waiver of the right to exercise such option at any other time so long as such event of default remains outstanding and uncured.

Lender shall not exercise any right or remedy provided for herein (other than Lender's right to be paid a late charge, as described above), unless (1) in the event of a monetary default, Maker shall have failed to pay the amounts then due within ten (10) days after such amounts are due; or (2) in the event of a non-monetary default, Maker shall have failed, within a period of ten (10) days after notice of such default, to correct the non-monetary default; provided, however, that no grace period shall be applicable to maturity and that Lender shall not be required to allow any part of the grace period if Maker shall have filed a petition in bankruptcy or for reorganization or a bill in equity or otherwise initiated proceedings for the appointment of a receiver of Maker's assets, or if Maker shall have made an assignment for the benefit of creditors, or if a receiver or trustee is appointed for Maker and such appointment and such receivership is not terminated within thirty (30) days. Notwithstanding anything contained herein to the contrary: (a) Lender shall not be required to allow any grace period or give notice of any default as aforesaid more than two (2) times in any twelve (12) month period with respect to substantially similar events of default; and (b) Lender shall be permitted to cure any default by Maker without allowing any part of the grace period if Lender determines, in its sole judgment, that its security may be threatened or impaired by reason of such default. In the event that any of the Loan Documents contains a grace period, such grace period shall run concurrently with the grace period granted herein and, if the grace period granted in such other document is shorter than that set forth herein, the grace period set forth herein shall control.

The remedies of Lender as provided herein, or in the Mortgage, and the warrants contained herein or attached hereto or contained in the Mortgage, shall be cumulative and concurrent, and may be pursued singly, successively or together at the sole discretion of Lender, and may be exercised as often as occasion therefor shall occur; and the failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof.

Maker hereby waives and releases all benefit that might accrue to Maker by virtue of any present or future laws exempting the Mortgaged Property, or any other property, real or personal, or any part of the proceeds arising from any sale of any such property, from attachment, levy or sale under execution, or providing for any stay of execution to be issued on any judgment recovered on this Note or in any action to foreclose the Mortgage, exemption from civil process, or extension of time for payment. Maker and all endorsers, sureties and guarantors hereby jointly and severally waive presentment for payment, demand, notice of demand, notice of nonpayment or dishonor, protest and notice of protest of this Note, and, except as expressly required by the terms and provisions of the Note and other Loan Documents, all other notices in connection with the delivery, acceptance, performance, default, or enforcement of the payment of this Note, and they agree that the liability of each of them shall be unconditional, joint and several, without regard to the liability of any other party, and shall not be affected in any manner by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Lender. Maker and all endorsers, sureties and guarantors consent to any and all extensions of time, renewals, waivers or modifications that may be granted by Lender with respect to the payment or other provisions of this Note, and to the release of the collateral or any part thereof, with or without substitution, and agree that additional makers, endorsers, guarantors or sureties may become parties hereto without notice to them or affecting their liability hereunder.

If any provision of this Note is held to be invalid or unenforceable by a court of competent jurisdiction, the other provisions of this Note shall remain in full force and effect and shall be liberally construed in favor of Lender in order to effect the provisions of this Note. In addition, in no event shall the

rate of interest payable hereunder exceed the maximum rate of interest permitted to be charged by applicable law (including the choice of law rules) (hereinafter the "Maximum Legal Rate") and any interest paid in excess of the permitted rate shall be refunded to Maker. Such refund shall be made by application of the excessive amount of interest paid against any sums outstanding and shall be applied in such order as Lender may determine. If the excessive amount of interest paid exceeds the sums outstanding, the portion exceeding the said sums outstanding shall be refunded in cash by Lender. Any such crediting or refund shall not cure or waive any default by Maker hereunder. Maker agrees, however, that in determining whether or not any interest payable under this Note exceeds the highest rate permitted by law, any nonprincipal payment, including, without limitation, prepayment fees and late charges, shall be deemed to the extent permitted by law, to be an expense, fee, premium or penalty rather than as interest.

In determining whether or not the interest paid or payable under any specific contingency exceeds the Maximum Legal Rate, Lender shall, to the maximum extent permitted under applicable law: (a) exclude voluntary prepayments and the effects thereof; and (b) amortize, prorate, allocate and spread, in equal parts, the total amount of interest throughout the entire contemplated term of this Note so that the interest rate is uniform throughout the entire term of this Note; provided, that if this Note is paid and performed in full prior to the end of the full contemplated term hereof, and if the interest received for the actual period of existence thereof exceeds the Maximum Legal Rate, Lender shall refund to Maker the amount of such excess, and in such event, no holder shall be subject to any penalties provided by any laws for contracting for, charging or receiving interest in excess of the Maximum Legal Rate.

In addition to all liens upon, and rights to setoff against, the monies, securities or other property of Maker given to Lender by law, and until such time as the amounts owed to Lender pursuant to the Loan Documents are paid in full, Maker agrees that Lender shall have a lien upon, and a right to setoff against, all monies, securities, and other property of Maker now or hereafter in possession of or on deposit with Lender, whether held in a general or special account of deposit, or for safekeeping or otherwise; and, every such lien and right to setoff may be exercised without demand upon or notice to Maker. No lien or right to setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right to setoff or to enforce such lien, or by any delay in so doing; and every right to setoff and lien shall continue in full force and effect until such right to setoff or lien is specifically waived or released by an instrument in writing executed by Lender.

Lender shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by Lender, and then only to the extent specifically set forth in the writing. A waiver on one event shall not be construed as continuing or as a bar to or waiver of any right or remedy to a subsequent event.

This instrument shall be governed by and construed according to the laws of the State of Florida. Maker consents to the exclusive jurisdiction of the courts of the State of Florida and the federal courts located in Florida in any and all actions and proceedings, whether arising hereunder or under any of the Loan Documents.

Maker agrees that venue for any action brought by Lender under this Note, the Mortgage or the Loan Documents shall, at Lender's option, be either the county in which Lender's principal place of business is located or the county in which the Mortgaged Property is located, except that with respect to the Mortgage, venue shall only be proper in the county in which the Mortgaged Property is located.

Whenever used, the singular number shall include the plural, the plural the singular, the use of any gender shall be applicable to all genders, and the words "Lender" and "Maker" shall be deemed to

include the respective heirs, personal representatives, successors and assigns of Lender and Maker.

This Note may not be amended or modified, nor shall any waiver of any provision hereof be effective, except by an instrument in writing executed by Maker and Lender.

In the event of a default by any Maker, and if any Maker is a "head of family" as defined by §222.11(1)(c), Florida Statutes (2010), as a natural person who is providing more than one-half of the support for a child or other dependant, the Maker hereby voluntarily, expressly and specifically agrees that all of his or her disposable earnings greater than Seven Hundred Fifty Dollars ($750.00) per week may be attached or garnished to the fullest extent permitted by §222.11(2), Florida Statutes (2010), but in no event shall the amount attached or garnished exceed the amount allowed under the Consumer Credit Protection Act, 15 U.S.C. 1673. The Maker further expressly acknowledges and agrees that available exemptions from attachment, garnishment or legal process as provided for in Chapter 222, Florida Statutes (2010), shall not be effective if such exemption results from a fraudulent transfer or conveyance as provided in Chapter 726, Florida Statutes.

MAKER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION PROCEEDINGS OR COUNTERCLAIMS ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE MORTGAGE, THIS NOTE, OR ANY OF THE OTHER LOAN DOCUMENTS. FURTHER, MAKER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE BANK NOR THE BANK'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE BANK WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE MAKER ACKNOWLEDGES THAT THE BANK HAS BEEN INDUCED TO ENTER INTO THIS TRANSACTION BY, INTER ALIA, THE PROVISIONS OF THIS SECTION. MAKER AGREES NOT TO SEEK TO CONSOLIDATE ANY SUCH ACTION IN WHICH A JURY TRIAL HAS BEEN WAIVED WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE WAIVED.

SG

THE DOCUMENTARY STAMPS AND INTANGIBLE TAXES IN THE AMOUNT REQUIRED BY LAW HAVE BEEN PAID ON AND ARE AFFIXED TO THE MORTGAGE OF EVEN DATE SECURING THIS NOTE TO BE RECORDED IN THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA.

**THIS IS A BALLOON NOTE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $130,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE LENDER UNDER THE TERMS OF THIS LOAN.**

Maker, intending to be legally bound hereby, has caused this Note to be executed as of the day and year first above written. This Note consists of six (6) pages.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

CITY TRUST INVESTMENTS LLC, a Florida limited liability company

By: ______________________
SANTOS GONZALEZ -Borrower, Manager

*[Sign Original Only]*