# BALLOON PROMISSORY NOTE

LOAN#:

$220,000.00 CITY TRUST INVESTMENTS LLC

October 7, 2022 Homestead, FL

FOR VALUE RECEIVED, the undersigned **SANTOS GONZALEZ as Manager of CITY TRUST INVESTMENTS LLC, a Florida Limited Liability Company, and SANTOS GONZALEZ, Individually,** (**collectively "Maker" and/or "Borrower"**), whose address is 27581 South Dixie Hwy., Suite 2, Homestead, FL 33032 promises to pay to the order of **POLONIO LLC, a Florida limited liability company, ("Lender" or "Holder")** whose address is 1657 SW 108th Way, Davie, FL 33324, **the sum of TWO HUNDRED TWENTY THOUSAND DOLLARS ($220,000.00)**, with interest thereon on the principal balance which is from time to time outstanding from the date hereof at the rate of interest set forth herein and payable monthly as follows:

> Interest on the outstanding principal balance of this Promissory Note (this "Note") shall accrue at an **annual rate of ten percent (10%) for the first year and eleven percent (11%) for the second year**. Interest as aforesaid shall be calculated on the basis of a 365-day year, but interest shall accrue and be payable for the actual number of days in each month.
>
> Commencing **December 01, 2022**, and continuing on the 1st day of each and every month thereafter through **November 01, 2023 monthly payments of interest only in the amount of $1,833.34** shall be due and payable and commencing on **December 01, 2023** and continuing on the 1st day of each and every month thereafter through including Maturity Date, **monthly payments of interest only in the amount of $2,016.67** (as calculated above) on the outstanding principal balance of this Note shall be due and payable from Maker to Holder.
>
> **The outstanding principal balance of this Note** together with all accrued and unpaid interest **shall be due and payable from Maker to Holder on November 01, 2024** (the "Maturity Date").
>
> Maker, at its option, may prepay the Note at any time together with the unpaid interest on the principal amount accrued to the date of such prepayment as well as any late payment fees. Notwithstanding the foregoing, in the event any portion of the principal amount of this Note is paid prior to **May 01, 2023**, in addition to all other amounts due under the Note, **a prepayment penalty in the amount of six (6) months interest ($11,000.04)** based on the original principal amount of this Note shall immediately become due and payable.

Each maker, endorser and guarantor, jointly and severally agrees to pay all costs of collection, including reasonable attorneys' fees, in the event it becomes necessary to protect the security hereof, whether suit be brought or not.

The said principal sum or the unpaid balance thereof, with interest thereon, shall become due and payable, at the option of the Holder, after default in the payment of any installment of principal or interest beyond the expiration of all applicable cure and grace periods, or upon the occurrence of an Event of Default (as such term is defined herein) and the expiration of all

SG

applicable cure and grace periods under the Mortgage or any of the other Loan Documents (as defined below). Should the Maker fail to pay any installment of principal or interest hereunder and remain in **default for a period of Ten (10) days**, the Maker shall pay **a late charge in the amount of Five Percent (5%)** on the installment of principal and interest so overdue.

From and after the occurrence of an Event of Default under this Note or the maturity thereof, whether normal maturity or accelerated maturity, and also after any judgment which may be entered against any Obligor, Maker or Borrower and in favor of Holder, and the unpaid principal hereof shall bear interest at the highest lawful rate ("Default Rate").

**This Note is secured by a Mortgage, of even date herewith (the "Mortgage") encumbering the following real property located at 28152 SW 142nd Ct, Homestead, FL 33033 & 28091 SW 143rd Ct, Homestead, FL 33033 in Miami-Dade County, Florida.** The Note and the Loan Documents (as defined below) are to be construed and enforced according to the laws of the State of Florida.

The term "Loan Documents" shall mean any and all of the documents heretofore, now, or hereafter executed by Maker, by any guarantors of the loan evidenced hereby or by Maker and any guarantors of the loan evidenced hereby which wholly or partly secure or were, are, or will be executed in connection with the indebtedness evidenced by this Note, including, but not limited to, the Mortgage, and other associated affidavits, disclosures and loan documentation executed in connection therewith.

The Borrower and any endorsers, sureties, guarantors, and all others who are, or who may become liable for the payment hereof, severally expressly grant to the Lender a continuing first lien security interest in and authorize and empower the Lender, at its sole discretion, at any time after the occurrence of an Event of Default hereunder and provided all applicable notice, grace and/or cure periods shall have expired, to appropriate and in such order as Lender may elect, apply to the payment hereof or to the payment of any and all indebtedness, liabilities and obligations of such parties to the Lender or any of Lender's affiliates, whether now existing or hereafter created or arising or now owned, or howsoever after acquired by Lender or any of Lender's affiliates (whether such indebtedness, liabilities and obligations are or will be joint or several, direct or indirect, absolute or contingent, liquidated or unliquidated, matured or un-matured), including, but not limited to, any letter of credit issued by Lender for the account of any such parties, any and all money, general or specific deposits, or collateral of any such parties now or hereafter in the possession of the Lender.

Borrower, and any endorsers, sureties, guarantors and all others who are, or who may become liable for the payment hereof, severally, irrevocably, and unconditionally (a) agree that any suit, action, or other legal proceeding arising out of or relating to this Note shall be brought, at the option of the Lender, in a court of record of the State of Florida in Miami-Dade County, in the United States District Court for the Southern District of Florida, or (b) consent to the jurisdiction of each such court in any such suit, action or proceeding; and (c) waive any objection which it or they may have to the laying of venue of any such suit, action, or proceeding in any such courts.

Upon the happening of any of the following events, each of which shall constitute an "Event of Default" (herein so called) hereunder, all sums due hereunder shall thereupon or thereafter, at Lender's option, without notice or demand, become immediately due and payable: (a) failure of any Obligor (which term shall mean and include each Maker,

Endorser, Surety, Guarantor or other party liable for payment of or pledging collateral or security under this Note) to pay any sum due hereunder or under any of the Loan Documents within Five (5) days following the due date therefor; (b) occurrence of default under any of the Loan Documents or any other loan agreement or security instrument now or hereafter in effect which by its terms covers this Note or the indebtedness evidenced hereby which is not cured prior to the expiration of any applicable grace or cure periods; (c) making of a general assignment by any Obligor for the benefit of creditors, appointment of or taking possession by a receiver, trustee or custodian or similar official for any Obligor or for any assets of any such Obligor or institution by or against any Obligor of any kind of insolvency proceedings or any proceeding for dissolution or liquidation of any Obligor which is not dismissed within thirty (30) days of the filing thereof; (d) material falsity in any certificate, statement, representation, warranty or audit at any time furnished to Lender by or on behalf of any Obligor pursuant to or in connection with this Note, the Loan Documents or any loan agreement or security agreements now or hereafter in effect, which by its terms covers this Note for the indebtedness evidenced hereby or otherwise including, omission to disclose any substantial contingent or liquidated liabilities or any material adverse change in any facts disclosed by any certificate, statement, representation, warranty or audit furnished to Lender; (e) issuance of any writ of attachment or writ of garnishment or filing of any lien against any Collateral or the property of any Obligor which is not dismissed within thirty (30) days of the date of issuance or filing, whichever is applicable; (f) taking of possession of any material Collateral or of any substantial part of the property of any Obligor at the instance of any governmental authority; (g) dissolution, merger, consolidation, or reorganization of any Obligor; (h) assignment or sale by any Obligor of any equity in any collateral securing payment of this Note without the prior written consent of Lender; (i) cancellation of any guaranty with respect hereto without the prior written consent of Lender hereof; (j) default under any commitment or loan made by any lending institution or individual to Borrower or any Obligor; (k) the entry of a judgment or the issuance of a writ of attachment against Maker. At any time after the occurrence of an Event of Default, the indebtedness evidenced by this Note and/or any notes or other obligations which may be taken in renewal, extension, substitution or modification of all or any part of the indebtedness evidenced hereby or thereby, shall, at the option of the Holder, immediately become due and payable without demand upon or notice to Maker, and Holder shall be entitled to exercise the other remedies as provided by law or in equity. Any amount of principal and/or interest evidenced by this Note which is not paid when the same is due (either due to an Event of default or otherwise), whether at stated maturity, by acceleration or otherwise, shall bear interest from the date due until such amount is paid in full at a rate equal to the greater of (i) eighteen percent (18%) and (ii) the maximum rate permitted by applicable law.

Lender, shall have all of the rights and remedies of a creditor, mortgagee and secured party under the Loan Documents and all applicable laws.

Holder does not intend to violate any applicable usury laws. If the calculation of interest or the imposition of a change in the rate of interest after acceleration upon default or the payment of any fees or other charges which are construed to be interest under applicable law, rule, or regulation in effect from time to time, result in an effective rate of interest higher than that permitted to be paid under applicable law, rule, or regulation in effect from time to time, then such charges shall be reduced by a sum sufficient to result in an effective rate of interest no greater the maximum effective rate of interest permitted to be paid under applicable law, rule or regulation in effect from time to time. The Lender may, in determining the maximum rate permitted under applicable law, rule or regulation in effect from time to time, take advantage of: (i) the rate of interest permitted by Florida Statutes Chapter 665

(Florida Savings Association Act), by reason of both Section 687.12 Florida Statutes and (ii) any other law, rule or regulation in effect from time to time, available to Lender which exempts Lender from any limit upon the rate of interest it may charge or grants to Lender the right to charge a higher rate of interest than that permitted by Florida Statutes, Chapter 687. Upon maturity of this Note, whether by acceleration or in due course, interest shall be recalculated over the actual life of the loan based upon the amounts outstanding, and if the total amount of interest theretofore paid exceeds the amount permitted to be paid under applicable law, rule, or regulation in effect from time to time, the excess shall be credited to principal, or if such excess exceeds the principal amount due hereunder, refunded to the Borrower.

At Lender's option all payments shall be paid by Borrower to Lender by Electronic Funds Transfer and Borrower agrees to deliver such instruments to Lender to effectuate same.

DOCUMENTARY STAMPS. Documentary stamps in the amount required by Florida Law have been purchased and affixed to either this Note or any Mortgage of even date that secures this Note.

**MAKER AND HOLDER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT THEY MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION (INCLUDING BUT NOT LIMITED TO) ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE, ANY OF THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN.**

**MAKER HEREBY CERTIFIES THAT NO REPRESENTATIVE OR AGENT OF THE HOLDER NOR THE HOLDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE HOLDER WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. MAKER ACKNOWLEDGES THAT THE HOLDER HAS BEEN INDUCED TO ENTER INTO THIS LOAN, INCLUDING THIS NOTE, BY, AMONG OTHER THINGS, THE PROVISIONS OF THIS PARAGRAPH.**

IN WITNESS WHEREOF, Maker has caused this Note to be duly executed and delivered as of the 7th day of October, 2022.

CITY TRUST INVESTMENTS LLC
a Florida limited liability company

By: ______________________
SANTOS GONZALEZ, Manager

By: ______________________
SANTOS GONZALEZ, Personally

This Instrument Was Prepared By and
Record & Return to:

TROY NADER, ESQ.
LAW OFFICES OF TROY NADER
14335 SW 120TH ST.
SUITE 103
MIAMI, FLORIDA 33186

FOLIO #: 30 7903 013 1060
And 30 7903 013 1790

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $220,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

## FIRST MORTGAGE

**THE UNDERSIGNED MORTGAGOR HEREBY REPRESENTS AND CERTIFIES THAT THIS LOAN IS BEING OBTAINED FOR BUSINESS PURPOSES ONLY, I.E. TO REFINANCE AN INVESTMENT, INCOME PRODUCING PROPERTY. MORTGAGOR'S ATTEST THAT THEY HAVE NO INTENTION OF OCCUPYING THIS PROPERTY AT ANYTIME AS THEIR HOMESTEAD, SECOND HOME OR VACATION HOME.**

**THE EXTENSION OF CREDIT SECURED BY THIS MORTGAGE IS EXEMPT FROM ANY AND ALL PROVISIONS OF THE FEDERAL CONSUMER CREDIT PROTECTION ACT (TRUTH-IN-LENDING ACT) AND REGULATION "Z" OF THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, BECAUSE THE TRANSACTION REPRESENTED BY THIS MORTGAGE IS BEING EXECUTED FOR COMMERCIAL PURPOSES ONLY AND THE PROCEEDS OF THE LOAN ARE NOT BEING USED FOR PERSONAL FAMILY OR HOUSEHOLD PURPOSES.**

THIS FIRST MORTGAGE (the "Mortgage"), executed as of the 7th day of October, 2022, by **CITY TRUST INVESTMENTS LLC,** a Florida Limited Liability Company, ( "Maker" and/or "Borrower"), whose address is, 27581 SOUTH DIXIE HWY., Suite 2, Homestead, FL 33032, hereinafter called the "Mortgagor," which term as used in every instance shall include the Mortgagor's heirs, executors, administrators, successors, legal representatives and assigns, either voluntary by act of the parties or involuntary by operation of law and shall denote the singular and/or plural, the masculine and/or feminine and natural and/or artificial persons, whenever and wherever the context so requires or admits, grants in favor of **POLONIO LLC**, a Florida limited liability company, whose address is 1657 SW 108th Way, Davie, FL 33324 hereinafter called the "Mortgagee," which term as used in every instance shall include the Mortgagee's successors, legal representatives and assigns, including all subsequent assignees, either voluntary or by act of the parties or involuntary by operation of law.

WITNESSETH:

THAT for good and valuable considerations, and to secure the payment of the aggregate sum of money named in that certain Promissory Note in the principal sum of **TWO HUNDRED TWENTY THOUSAND DOLLARS & 00 cents ($220,000.00), to POLONIO LLC**, of even date herewith, to mature on **November 1, 2024**, hereinafter mentioned, together with interest thereon or so much thereof as may be advanced, and all other sums of money secured hereby as hereinafter provided, Mortgagor hereby grants, bargains, sells, conveys, assigns, transfers, mortgages, pledges, delivers, sets over, warrants and confirms to Mortgagee, and grants Mortgagee a security interest in: the following described real estate of which the Mortgagor is now seized and possessed, and in actual possession situate in the County of Miami-Dade, State of Florida and as legally described as follows (the "Premises"):

**Parcel 1:**

**Lot 25, Block 8, Seapines, according to the Plat thereof as recorded in Plat Book 100, page(s) 6, of the Public Records of Miami-Dade County, Florida.**
AKA: 28152 SW 142nd Ct, Homestead, FL 33033

**Parcel 2:**

**Lot 12, Block 4, Seapines, according to the Plat thereof as recorded in Plat Book 100, page(s) 6, of the Public Records of Miami-Dade County, Florida.**
AKA: 28091 SW 143rd Ct, Homestead, FL 33033

TOGETHER WITH the following property and rights (the Premises, together with such property and rights, being hereinafter collectively called "Mortgaged Property" or "Property"):

a. All right, title and interest of Mortgagor in and to the land lying in the bed of any street, road or avenue, opened or proposed, in front of or adjoining the Premises, and in and to the appurtenances thereto;

b. All buildings, apparatus, equipment, fittings, furniture, furnishings, fixtures and articles of personal property of every kind and nature whatsoever now or hereafter located in any building or upon the Premises, or any part thereof, and used or usable in connection with any present or future occupancy of said building, including all gas, steam, electric, water, cooking, refrigerating, lighting, plumbing, heating, air conditioning and ventilation fixtures, power systems, machines, window treatments, flooring, and appliances, even though they may be detached or detachable, and all easements, rights, rents, royalties, mineral, oil, and gas rights and profits and water rights now owned or hereafter acquired by Mortgagor; and,

c. Any and all awards of payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, any other injury to, or decrease in the value of, the Premises, or proceeds of insurance awards, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by Mortgagee, and of the reasonable attorneys' fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment; and Mortgagor agrees to execute and deliver, from time to time, such further instruments as may be requested by Mortgagee to confirm such assignment to Mortgagee of any such award or payment.

TO HAVE AND TO HOLD the above described property unto the Mortgagee, its successors and assigns forever.

The Mortgagor hereby covenants with the Mortgagee that the Mortgagor is indefeasibly seized with the absolute and fee simple title to said property, and has full power and lawful authority to sell, convey transfer and mortgage the same; that it shall be lawful at any time hereafter for the Mortgagee to peaceably and quietly enter upon, have, hold and enjoy said property, and every part thereof; that this Mortgage is and will remain a valid and enforceable lien on the Mortgaged Property and that said Mortgaged Property is free and discharged from all liens, encumbrances and claims of any kind, including taxes and assessments, except for those Permitted Exceptions (the "Permitted Exceptions"); and that the Mortgagor hereby fully warrants unto the Mortgagee the title to said Mortgaged Property and will defend the same against the lawful claims and demands of all persons whomsoever.

NOW, THEREFORE, the condition of this Mortgage is such that if the Mortgagor shall well and truly pay unto the Mortgagee the indebtedness evidenced by that certain Promissory Note (hereinafter sometimes called "Note" or "Mortgage Note") of even date herewith, made by the Mortgagor and payable to the Mortgagee in the principal sum of **TWO HUNDRED TWENTY THOUSAND DOLLARS & 00 cents ($220,000.00),** together with interest as set forth therein, and shall perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants contained and set forth in this Mortgage and in the Promissory Note secured hereby, then this Mortgage and the estate hereby created shall cease and be null and void.

AND the Mortgagor does hereby covenant and agree:

1. To perform, comply with and abide by each and every of the stipulations, agreements, conditions and covenants contained and set forth in said Promissory Note and this Mortgage, the Note and all other documents executed in connection with the loan (the "Loan") evidenced by the Note and secured by this Mortgage, including, without limitation, (the Note, this Mortgage, the Security Agreement and such other documents are sometimes referred to herein, collectively, as the "Loan Documents").

2. To permit, commit or suffer no waste; to comply with or cause to be complied with, all statutes, ordinances and requirements of any governmental or other authority relating to the Mortgaged Property; and to do or permit to be done to said Premises nothing that will alter or change the use and character of said property or in any way impair or weaken the security of this Mortgage. And in case of the refusal, neglect or inability of the Mortgagor to repair and maintain said Mortgaged Property, the Mortgagee may, at its option, make such repairs or cause the same to be made and advance monies in that behalf and the amount of such monies advanced by Mortgagee shall thereupon be secured by this Mortgage and become a lien on the Mortgaged Property.

3. That Mortgagor will promptly pay and discharge any and all license fees or similar charges, together with any penalties and interest thereon, which may be imposed by the jurisdiction in which the Property is situated for the use of vaults, chutes, areas and other space beyond the lot line and under or abutting the public sidewalks in front of or adjoining the Premises; that Mortgagor will promptly cure any notice of violation of law and comply with any order entered pursuant to said violation; that if Mortgagor shall default in making such payment and obtaining such discharge or in curing any such violation Mortgagee may make such payment, together with

penalties and interest thereon, and obtain such discharge and cure any such violation, and the amount of such payment and the expenses incurred by Mortgagee in obtaining such discharge and curing any violation shall thereupon be secured by this Mortgage and become a lien on the Mortgaged Property; and that Mortgagor will repay the amount of such payment and such expenses to Mortgagee, together with interest thereon at the default rate of interest set forth in the Note, within five (5) days after demand for said payment is made by Mortgagee to Mortgagor.

4. The Mortgagor, immediately upon obtaining knowledge of the institution of any proceedings for the condemnation of the Premises or any portion thereof, will notify the Mortgagee of the pendency of such proceedings. The Mortgagee may participate in any such proceedings and the Mortgagor, from time to time, will deliver to the Mortgagee all instruments requested by it to permit such participation.

5. That, notwithstanding any taking by eminent domain, alteration of the grade of any street or other injury to or decrease in value of the Mortgaged Property by any public or quasi-public authority or limited liability company, Mortgagor shall continue to pay interest as provided in the Mortgage Note until any such award or payment shall have been actually received by Mortgagee and any reduction in the principal sum resulting from the application by Mortgagee of such award or payment, as hereinafter set forth, shall be deemed to take effect only on the date of such receipt; that said award or payment may be applied, in such proportions and priority as Mortgagee in Mortgagee's sole discretion may elect, to the payment of principal whether or not then due and payable, or any sums secured by this Mortgage and/or to payment to Mortgagor, on such terms as Mortgagee may specify, to be used for the sole purpose of altering, restoring or rebuilding any part of the Mortgaged Property which may have been altered, damaged or destroyed as a result of any such taking, alteration of grade, or other injury to the Mortgaged Property; and that, if prior to the receipt by Mortgagee of such award or payment, the Mortgagee acquires title to the Property through judicial sale or deed in lieu of foreclosure, then such award shall be applied to payment of the Mortgage debt remaining unsatisfied after such sale or deed in lieu of foreclosure of the Mortgaged Property, and the Mortgagee shall be entitled to receive such award after such sale of the Mortgaged Property through judicial proceedings, with legal interest thereon, whether or not a deficiency judgment on this Mortgage shall have been sought or recovered or denied, and of the reasonable attorney's fees, costs and disbursements incurred by Mortgagee in connection with the collection of such award or payment.

6. The Mortgagor will, at the cost of the Mortgagor and without expense to the Mortgagee, do, execute, acknowledge and deliver all and every such further acts, deeds, conveyances, mortgages, assigns, notices of assignments, transfers and assurances as the Mortgagee shall from time to time require, for the better assuring conveying, assigning, transferring and confirming unto the Mortgagee the property and rights hereby conveyed or assigned or intended now or hereafter so to be, or which the Mortgagor may be or may hereafter become bound to convey or assign to the Mortgagee, or for carrying out the intention or facilitating the performance of the terms of this Mortgage or for filing, registering or recording this Mortgage and on demand will execute and deliver, and hereby authorizes the Mortgagee to execute in the name of the Mortgagor to the extent it may lawfully do so, one or more financing statements, chattel mortgages or comparable security instruments, to evidence more effectively the lien hereof upon the Mortgaged Property.

7. a. The Mortgagor forthwith upon the execution and delivery of this Mortgage and thereafter, from time to time, will cause this Mortgage and any security instrument creating a lien or evidencing the lien hereof upon the Mortgaged Property and each instrument of further assurance to be filed, registered or recorded in such manner and in such places as may be

SG

required by any present or future law in order to publish notice of and fully protect the lien hereof upon, and the interest of the Mortgagee in, the Mortgaged Property.

b. The Mortgagor will pay all filing, registration or recording fees and all expenses incident to the preparation, execution and acknowledgment of this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the chattels, and any instrument of further assurance, and all federal, state, county and municipal stamp taxes and other taxes, duties, imposts, assessments and charges, other than income taxes, arising out of or in connection with the execution and delivery of the Note, this Mortgage, any mortgage supplemental hereto, any security instrument with respect to the chattels or any instrument of further assurance.

8. Mortgagor shall pay all real property taxes, assessments, homeowner association dues, charges, liens, fines and impositions attributable to the Property before the same become delinquent, and shall furnish Mortgagee with receipts and proofs thereof at least 10 days before the last day allowed for payment free from penalty, without notice or demand from Mortgagee. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may pay the same, including the reasonable charge for services of counsel, or for any person employed to aid in the discharge or in the matter of the adjustment thereof, or for advice in respect thereto, and any amounts so paid shall become part of the indebtedness secured hereby, shall, at the option of the Mortgagee, become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing any indebtedness secured hereby. Mortgagor shall promptly furnish to Mortgagee all notices of amounts to be paid and violation and lien notices related to all or any portion of the Property. Mortgagor shall not allow any liens to be perfected against the Property without the Mortgagee's prior written permission, which may be unreasonably withheld, conditioned, and/or delayed.

9. The Mortgagor, from time to time, when the same shall become due, will pay and discharge all taxes of every kind and nature (including real and personal property taxes), all general and special assessments, levies, permits, inspection and license fees, all water and sewer rents and charges, and all other public charges whether of a like or different nature, imposed upon or assessed against it or the Mortgaged Property or any part thereof or upon the revenues, rents, issues, income and profits of the Mortgaged Property or arising in respect of the occupancy, use or possession thereof (collectively, "Taxes"). The Mortgagor will upon the request of the Mortgagee, deliver to the Mortgagee receipts evidencing the payment of all such Taxes. In the event of a default by Mortgagor under this Mortgage, the Note, Real Estate Taxes or Homeowner Association Dues or any of the other Loan Documents, Mortgagor shall, upon request by Mortgagee, establish an escrow with Mortgagee and pay monthly an amount, as determined by Mortgagee, which is sufficient to permit Mortgagee to pay all Taxes when due.

10. The Mortgagor will pay from time to time when the same shall become due, all claims and demands of mechanics, materialmen, laborers, and others which, if unpaid, might result in or permit the creation of a lien on the Mortgaged Property, whether paramount or subordinate to this Mortgage, or any part thereof, or on the revenues, rents, issues, income and profits arising therefrom and in general will do or cause to be done everything necessary so that the first lien of this Mortgage shall be preserved, at the cost of the Mortgagor, without expense to the Mortgagee.

11. That the Mortgagor will cause Mortgagee to be added to Mortgagor's policies of insurance as an additional insured and a loss payee.

SG

12. a. The Mortgagor shall not transfer, or agree to transfer, in any manner, either voluntarily or involuntarily, directly or indirectly by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein, except for inventory and equipment sold by Mortgagor in the ordinary course of Mortgagor's business, without in each such case, the prior written consent of Mortgagee. Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such transfer shall be subject to this Mortgage and the other documents, and any such transferee shall assume all of Mortgagor's obligations hereunder and thereunder and agree to be bound by all provisions and perform all obligations contained herein and therein, Mortgagor covenanting and agreeing that the rights and obligations of Mortgagee hereunder and thereunder shall in no way be altered, diminished or otherwise affected thereby. Consent to one such transfer shall not be deemed a waiver of the right to require consent to future or successive transfers. As used in this Paragraph 12, "transfer" shall include without limitation any sale, assignment, lease or conveyance of the Mortgaged Property or any part thereof, or any interest therein, except leases for occupancy of a portion of the Premises subordinate to this Mortgage.

b. The Mortgagor shall not encumber, or agree to encumber in any manner, either voluntarily or involuntarily, directly or indirectly, by operation of law or otherwise, all or any portion of the Mortgaged Property, or any interest therein, without, in any such case, the prior written consent of the Mortgagee. The Mortgagee may grant or deny such consent in its sole discretion and, if consent should be given, any such encumbrance shall not be deemed to be a waiver of the right to require consent to future or successive encumbrances. As used herein, "encumber" shall include, without limitation, the placing or permitting the placing of any mortgage assignment of rents or other security device, including, but not limited to, a wrap-around mortgage, on the Mortgaged Property, or any portion thereof.

13. The Mortgagee may, at its option and without waiving of its right to accelerate the indebtedness hereby secured and to foreclose the same, pay either before or after delinquency any or all of those certain obligations required by the terms hereof to be paid by the Mortgagor for the protection of the Mortgaged Property securing or for the collection of the indebtedness hereby secured. All sums so advanced or paid by the Mortgagee shall be charged into the mortgage account and secured hereby and every payment so made shall bear interest from the date thereof at the default rate of interest specified in the Note and become an integral part thereof, subject in all respects to the terms, conditions and covenants of the aforesaid Note and this Mortgage, as fully and to the same extent as though a part of the original indebtedness evidenced by said Note and secured by this Mortgage.

14. The Mortgagor shall pay all costs, charges and expenses including attorneys' fee, expenses and abstract costs, reasonably incurred or paid at any time by the Mortgagee because of the failure of the Mortgagor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note, this Mortgage or any of the other Loan Documents.

15. That in order to accelerate the maturity of the indebtedness hereby secured because of the failure of the Mortgagor to pay any tax assessment, liability, obligation or encumbrance upon said property as herein provided, it shall not be necessary nor requisite that the Mortgagee shall first pay the same.

16. That any failure by Mortgagee to insist upon the strict performance by Mortgagor of any of the terms and provisions hereof shall not be deemed to be a waiver of any of the terms

and provisions hereof, and Mortgagee, notwithstanding any such failure, shall have the right thereafter to insist upon the strict performance by Mortgagor of any and all of the terms and provisions of this Mortgage to be performed by Mortgagor. That Mortgagee may release, regardless of consideration, any part of the security held for the indebtedness secured by this Mortgage without, as to the remainder of the security, in any way impairing or affecting the lien of this Mortgage or the priority of such lien over any subordinate lien, and that the Mortgagee may resort, for the payment of the indebtedness secured by this Mortgage, to any other security therefor held by the Mortgagee in such order and manner as Mortgagee may elect.

17. That if the Mortgagor shall fail, neglect or refuse for a period of **ten (10) days** fully and promptly to pay the amounts required to be paid by the Note hereby secured or the interest therein specified or any of the sums of money herein referred to or hereby secured, or otherwise duly, fully and promptly to perform, execute, comply with and abide by each, every or any of the covenants, conditions or stipulations of this Mortgage and the Note hereby secured ("Non-Monetary Default") within thirty (30) days after written notice for Non-Monetary Defaults and demand to satisfy, comply with or abide by same (provided, however, if such covenants, conditions or stipulations cannot by its nature be cured within thirty (30) days and if Mortgagor commences to cure such failure promptly after written notice and thereafter diligently pursues the curing thereof, Mortgagor shall have a period of sixty (60) additional days to effect a cure), then and in either or any of such events, without any additional notice or demand, the said aggregate sum mentioned in the Note, less previous payments if any, and any and all sums mentioned herein or secured hereby shall become due and payable forthwith or thereafter at the continuing option of the Mortgagee as fully and completely as if said aggregate sums were originally stipulated to be paid at such time, anything in the Note or herein to the contrary notwithstanding, and the Mortgagee shall be entitled thereupon or thereafter, without notice or demand, to institute suit at law or in equity to enforce the rights of the Mortgagee hereunder or under the Note or any of the other Loan Documents. In the event of any default or breach on the part of the Mortgagor hereunder, under the Note or any of the other Loan Documents (following applicable notices and the passage of applicable cure periods), the Mortgagee shall have the continuing option to enforce payment of all sums secured hereby by action at law or by suit in equity to foreclose this Mortgage, either or both, concurrently or otherwise, and one action or suit shall not abate or be a bar to or waiver of the Mortgagee's right to institute or maintain the other. Mortgagee shall not be required to give written notices of Monetary Defaults.

18. That in the event that Mortgagor or any of the Guarantors (as defined below) shall (a) consent to the appointment of a receiver, trustee, or liquidator of all or a substantial part of Mortgagor's assets, or (b) be adjudicated a bankrupt, or admit in writing its, his or her inability to pay its, his or her debts as they become due or (c) make a general assignment for the benefit of creditors or (d) file a petition or answer seeking reorganization or arrangement with creditors, or to take advantage of any insolvency law or (e) file an answer admitting the material allegations of a petition filed against the Mortgagor or any of the Guarantors, as applicable, in any bankruptcy, reorganization or insolvency proceeding or (f) take any action for the purpose of effecting any of the foregoing or (g) have any order, judgment or decree entered upon an application of a creditor of Mortgagor or either of the Guarantors, as applicable, by a court of competent jurisdiction approving a petition seeking appointment of a receiver or trustee of all or a substantial part of the Mortgagor's, or any of the Guarantors', as applicable, assets and such order, judgment or decree shall continue unstayed and in effect for any period of thirty (30) consecutive days, or (h) default under any commitment or loan made by any lending institution or individual to Mortgagor or any Guarantor, the Mortgagee may declare the Note hereby secured forthwith due and payable,

SG

whereupon the principal and the interest accrued on the Note and all other sums hereby secured shall become forthwith due and payable as if all of the said sums of money were originally stipulated to be paid on such day; and thereupon the Mortgagee without notice or demand may prosecute a suit at law and/or in equity as if all monies secured hereby had matured prior to its institution.

19. If foreclosure proceedings should be instituted against the Mortgaged Property covered by this Mortgage upon any other lien or claim whether alleged to be superior or junior to the lien of this Mortgage, the Mortgagee may, at its option, immediately upon institution of such suit or during the pendency thereof, declare this Mortgage and the indebtedness secured hereby due and payable forthwith and may at its option proceed to foreclose this Mortgage.

20. It is further covenanted and agreed by said parties that in the event of a suit being instituted to foreclose this Mortgage, the Mortgagee shall be entitled to apply at any time pending such foreclosure suit to the court having jurisdiction thereof for the appointment of a receiver of all and singular the Mortgaged Property, and thereupon it is hereby expressly covenanted and agreed that the court shall forthwith appoint such receiver with the usual powers and duties of receivers in like cases; and said appointment shall be made by the court as a matter of strict right to the Mortgagee, and without reference to the adequacy or inadequacy of the value of the Mortgaged Property, or to the solvency or insolvency of the Mortgagor or any other party defendant to such suit. The Mortgagor hereby specifically waives the right to object to the appointment of a receiver as aforesaid and hereby expressly consents that such appointment shall be made as an admitted equity and as a matter of absolute right to the Mortgagee and that the same may be done without notice to the Mortgagor and without the need to post a bond.

21. During the continuance of any such event of default, the Mortgagee personally, or by its agents or attorneys, may enter (following any applicable notice to Mortgagor and the passage of any applicable cure period) into and upon all or any part of the Premises, and each and every part thereof, and may exclude the Mortgagor, its agents and servants wholly therefrom; and having and holding the same, may use, operate, manage and control the Premises and conduct the business thereof, either personally or by its superintendents, Authorized Members agents, servants, attorneys or receivers; and upon every such entry, the Mortgagee at the expense of the Mortgaged Property or the Mortgagor from time to time either by purchase, repairs or construction, may maintain and restore the Mortgaged Property, whereof it shall become possessed as aforesaid, may complete the construction or development of the improvements and, in the course of such completion may make such changes in the contemplated improvements as it may deem desirable and may insure the same; and likewise, from time to time at the expense of the Mortgaged Property or the Mortgagor, the Mortgagee may make all necessary or proper repairs, renewals and replacements and such useful alterations, additions, betterments and improvements thereto and thereon as to it may deem advisable; and in every such case the Mortgagee shall have the right to manage and operate the Mortgaged Property and to carry on the business thereof and exercise all rights and powers of the Mortgagor with respect thereto either in the name of the Mortgagor or otherwise as it shall deem best; and the Mortgagee shall be entitled to collect and receive all earnings, revenues, rents, issues, profits and income of the Mortgaged Property and every part thereof, all of which shall for all purposes constitute property of the Mortgagor and after deducting the expenses of conducting the business thereof and of all maintenance, repairs, renewals, replacements, alterations, additions, betterments and improvements and amounts necessary to pay for taxes, assessments, insurance and prior or other proper charges upon the Mortgaged Property or any part thereof, as well as just and reasonable compensation for the services of the Mortgagee and for all attorneys, agents, clerks, servants and others employed by it properly engaged and employed, the Mortgagee shall apply

the monies arising as aforesaid, first to the payment of interest on the principal of the Note, second to the principal of the Note, when and as the same shall become payable and thereafter, to the payment of any other sums required to be paid by the Mortgagor under this Mortgage.

22. To the extent not otherwise pledged or obligated to under the Mortgage, Mortgagor hereby absolutely and unconditionally assigns and transfers to Mortgagee all the leases, subleases, franchises, rents, issues and profits of the Mortgaged Property, and hereby gives to and confers upon Mortgagee the right, power and authority to collect such rents, issues and profits as herein set forth. Mortgagor irrevocably appoints Mortgagee its true and lawful attorney-in-fact, at the option of Mortgagee, immediately and without further legal action being necessary, to demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, in the name of Mortgagor or Mortgagee, for all such rents, issues and profits and apply the same to the indebtedness secured hereby. This assignment constitutes an absolute assignment and not an assignment for additional security only. Mortgagee shall be entitled to exercise Mortgagee's rights in accordance with Florida Statutes 697.07. The exercise by Mortgagee of any of its rights or remedies under this paragraph shall not be deemed or construed to make Mortgagee a mortgagee-in-possession.

Upon any event of default under this Mortgage, Mortgagee may, at any time without notice, either in person, by agent or by a receiver appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of the Mortgaged Property, or any part thereof, in its own name, sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, apply the same, less costs and expenses of operation and collection, including attorneys' fees, upon any indebtedness secured hereby, and in such order as Mortgagee may determine. The collection of such rents, issues and profits, or the entering upon and taking possession of the Mortgaged Property, or the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done in response to such default or pursuant to such notice of default.

Except as hereinafter specifically provided, Mortgagor shall not, without the prior written consent of the Mortgagee, which may be withheld in Mortgagee's sole and absolute discretion, assign the rents, issues or profits, or any part thereof, from the Mortgaged Property or any part thereof, and shall not consent to the modification, cancellation or surrender of any lease or sublease covering the Mortgaged Property. An action of Mortgagor in violation of the terms of this Section shall be void.

The Mortgagor shall not, without the consent of the Mortgagee, consent to the cancellation or surrender of, or accept prepayment of, rents, issues or profits, other than rent paid at the signing of a lease or sublease, under any lease or sublease now or hereafter covering the Mortgaged Property or any part thereof, nor modify any such lease or sublease so as to shorten the term, decrease the rent, accelerate the payment of rent, or change the terms of any renewal option; and any such purported assignment cancellation, surrender, prepayment or modification made without the written consent of the Mortgagee shall be void as against the Mortgagee. The Mortgagor shall, upon demand of the Mortgagee, enter into an agreement with the Mortgagee with respect to the provisions contained in the preceding provision regarding any lease or sublease covering said Mortgaged Property or any part thereof, and the Mortgagor hereby appoints the Mortgagee attorney-in-fact of the Mortgagor to execute and deliver any such agreement on behalf of the Mortgagor and deliver written notice thereof to the Mortgagee to whose lease such agreement relates.

SG

The Mortgagor agrees to furnish to the Mortgagee a copy of any modification of any lease presently in effect and copies of all future leases affecting the Mortgaged Property covered by this Mortgage, and failure to furnish to the Mortgagee a copy of any modification of a lease or a copy of any future lease affecting said Mortgaged Property, shall be deemed a default under this Mortgage and the Note, for which the holder of this Mortgage may, at its option, declare the entire unpaid balance of the subject Mortgage and Note to be immediately due and payable.

All leases or subleases hereafter entered into by Mortgagor with respect to the Mortgaged Property or any part thereof, shall be subordinate to the lien of this Mortgage unless expressly made superior to this Mortgage in the manner hereinafter provided. At any time or times Mortgagee may execute and record in the appropriate Office of the Register or County Clerk of the County where the Premises are situated.

23. In case of proceedings by or against the Mortgagor in insolvency or bankruptcy or any proceedings for its reorganization or involving the liquidation of its assets then, and in such case, the Mortgagee shall be entitled to prove the whole amount of principal and interest due upon the Note to the full amount thereof and all other payments, charges and costs due under this Mortgage and any of the other Loan Documents, without deducting therefrom any proceeds obtained from the sale of the whole or any part of the Mortgaged Property; provided, however, that in no case shall the Mortgagee receive a greater amount than such principal and interest and such other payments, charges and costs from the aggregate amount of the proceeds of the sale of the Mortgaged Property and the distribution from the estate of the Mortgagor.

24. That the Mortgagee shall have the right from time to time, to take action to recover any sums, whether interest, principal or any installment of either, or any other sums required to be paid under the terms of this Mortgage or any of the other Loan Documents, all of which are and shall be deemed secured hereby, as the same become due, without regard to whether or not the principal sum secured, or any other sums secured, by the Mortgage or any of the other Loan Documents, shall be due and without prejudice to the right of action, for a default or defaults by Mortgagor existing at the time such earlier action was commenced. No remedy conferred or reserved to the Mortgagee herein or in the Note or any of the other Loan Documents is intended to be exclusive of any other remedy or remedies, and each and every such remedy shall be cumulative, and shall be in addition to every other remedy given to the Mortgagee now or hereafter existing at law or in equity or by statute. No delay or omission of the Mortgagee to exercise any right or power accruing upon any event of default herein, or in the Note or any of the other Loan Documents, shall impair any such default or an acquiescence therein; and every power and remedy given by the Mortgage herein or in the Mortgage Note to the Mortgagee, may be exercised from time to time as often as may be deemed expedient by the Mortgagee. Nothing in this Mortgage or in the Note shall affect the obligation of the Mortgagor to pay the principal of, and interest on, the Note in the manner and at the time and place therein respectively expressed.

25. The Mortgagor will not, at any time, insist upon or plead, or in any manner whatsoever, claim or take any benefit or advantage of, any stay or extension of moratorium law, any exemption from execution or sale of the Mortgaged Property or any part thereof, wherever enacted, now or at any time hereafter in force, which may affect the covenants and terms of performance of this Mortgage, nor claim, take or insist upon any benefit or advantage of any law now or hereafter in force providing for the valuation or appraisal of the Mortgaged Property, or any part thereof, prior to any sale or sales thereof which may be made pursuant to any provision herein, or pursuant to the decree, judgment or order of any court of competent jurisdiction; nor,

SG

after any such sale or sales, claim or exercise any right under any statute heretofore or hereafter enacted, by any governmental authority or otherwise, to redeem the property so sold or any part thereof, and the Mortgagor hereby expressly waives all benefit or advantage of any such law or laws, and covenants not to hinder, delay or impede the execution of any power herein granted or delegated to the Mortgagee, but to suffer and permit the execution of every power as though no such law or laws had been made or enacted. The Mortgagor for itself and all who claim under it, waives, to the extent that it lawfully may, all right to have the Mortgaged Property marshaled upon any foreclosure hereof.

26. The Mortgagor acknowledges and agrees that the extension of credit by the Mortgagee to the Mortgagor represented by the Note is exempt from the provisions, including, without limitation, all disclosure requirements, of the Federal Consumers Credit Protection Act (Truth in Lending Act), Regulation "Z" (Truth in Lending) of the Board of Governors of the Federal Reserve System of the United States of America (the "Board"), and Regulation "X" (Real Estate Settlement Procedures) of the Board because the Mortgagee is not a "creditor" and the loan is not a "federally regulated mortgage loan" as defined thereunder, and the Fair Debt Collection Practices Act because the loan is only for business purposes, the property is strictly being refinanced for investment, income producing property, and the Mortgagor acknowledges that the proceeds of the Note are not being used for personal, family, household or agricultural purposes.

27. In the event any one or more of the provisions contained in this Mortgage or in the Note or any of the other Loan Documents shall, for any reason, be held to be inapplicable, invalid, illegal or unenforceable in any respect, such inapplicability, invalidity, illegality or unenforceability shall, at the option of the Mortgagee, not affect any other provision of this Mortgage, but this Mortgage shall be construed as if such applicable, invalid, illegal or unenforceable provision had never been contained herein or therein.

28. All notices hereunder shall be in writing and shall be deemed to have been sufficiently given or served for all purposes when presented personally or sent by facsimile (notice sent by facsimile shall be deemed given when such facsimile is received by the other party) or by registered or certified mail with return receipt requested to any party hereto at its address listed below or at such other address of which written notification has been given to the other party, as provided herein:

| | |
|---|---|
| TO THE MORTGAGOR: | CITY TRUST INVESTMENTS LLC,<br>27581 South Dixie Hwy., Suite 2,<br>Homestead, FL 33032 |
| TO THE MORTGAGEE: | POLONIO LLC<br>1657 SW 108th Way<br>Davie, FL 33324 |
| With a Copy To: | LAW OFFICES OF TROY NADER<br>14335 SW 120th ST. #103<br>Miami, FL 33186 |

29. All of the grants, covenants, terms, provisions and conditions herein shall run with the land and shall apply to, bind and inure to the benefit of the successors and assigns of the Mortgagor and successors and assigns of the Mortgagee.

30. That the Mortgagor will, on the request of the Mortgagee, furnish a written statement of the amount owing on the obligation which this Mortgage secures and therein state whether or not Mortgagor claims any defenses or offsets thereto. The Mortgagee agrees that it will, on request of the Mortgagor furnish a written statement of the amount owing on the obligation which this Mortgage secures and therein state whether or not Mortgagor is current in its payments and whether Mortgagee has knowledge of any defaults hereunder specifying therein the nature of such defaults, if any.

31. The Mortgagor covenants that in the event the ownership of the Mortgaged Property or any part thereof becomes vested in a person other than the Mortgagor, the Mortgagee may, without notice to the Mortgagor, deal with such successor or successors in interest with reference to this Mortgage, and the debt secured hereby in the same manner as with the Mortgagor and may forbear to sue or may extend time for payment of the debt secured thereby, without discharging or in any way affecting the liability of the Mortgagor hereunder or upon the debt hereby secured.

32. That this Mortgage cannot be changed orally.

33. That it is the intent hereof to secure payment of the Note whether the full amount thereof shall have been advanced to the Mortgagor at the date hereof or at a later date, and the Mortgagee may, at the sole option of the Mortgagee, from time to time make future advances to the Mortgagor, which advances shall be secured by this Mortgage, provided, however, that the total principal sum secured hereby and remaining unpaid including any such advances, shall not at any time exceed twice the original sum of the Note as set forth above (or such other maximum amount as may from time to time be permitted by law). All such future advances shall be made within the time limit authorized by Florida law for making valid future advances with interest and all indebtedness hereby. All provisions of this Mortgage shall apply to any future advances made pursuant to the provisions of this paragraph. Nothing herein contained shall limit the amount secured by this Mortgage, if such amount is increased by advances made by the Mortgagee as herein elsewhere provided and authorized for the protection of the security of the Mortgage.

34. If from any circumstances whatsoever, fulfillment of any provision of this Mortgage or the Note secured by it at the time performance of said provision shall be due, shall involve transcending the limit of validity prescribed by the usury statutes of Florida, or any other law of Florida then ipso facto the obligation to be fulfilled shall be reduced to the limit of such validity.

35. The Mortgagor agrees to pay all real and personal property taxes assessed against the Mortgaged Property and to present to the Mortgagee receipts evidencing said payments on or before December 31 of the year for which such taxes are assessed. A failure to comply with the terms of this paragraph shall be a default in this Mortgage and the Mortgagee shall thereafter have the right to accelerate the payment of the unpaid principal indebtedness and to enforce this Mortgage according to the terms hereof.

36. From and after the occurrence of a default under this Mortgage, the Note or any of the other Loan Documents, or the maturity of the Note, whether normal maturity or accelerated maturity, and after the entry of Judgment, both the unpaid principal balance and accrued interest, on the Note, shall bear interest at the highest lawful rate.

37. In the event any law is passed in the State of Florida which would impose upon the Mortgagee an obligation to pay any tax other than income taxes or the intangible personal property tax paid at the time of the recordation of this Mortgage, then and in such event, the

SG

Mortgagor immediately upon demand will reimburse the Mortgagee for the amount of such tax paid by Mortgagee. If the Mortgagor is prohibited by law from making such reimbursement to the Mortgagee, or if the payment of such reimbursement by the Mortgagor would result in the violation of any statute of the State of Florida, the Mortgagee, at its option, shall have the right to declare the unpaid principal indebtedness plus accrued interest immediately due and payable.

38. This Mortgage shall be construed and governed by the laws of the State of Florida. Venue for all proceedings relating to this Agreement and/or its subject matter shall be in Miami-Dade County, Florida.

39. In addition to the lien on and security interest in the realty and improvements created hereby, this Mortgage shall, to the extent applicable, constitute a security agreement with respect to all personal property secured hereby; and the Mortgagor hereby agrees to execute and deliver on demand and hereby irrevocably authorizes and appoints the Mortgagee, the attorney-in-fact of the Mortgagor, jointly or severally, to execute in the name of the Mortgagor, deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements and comparable instruments as the Mortgagee may require in order to impose, perfect or more effectively evidence the lienor security interest hereby created. In addition to any other rights and remedies provided herein or by law, the Mortgagee shall be entitled to pursue any and all remedies of a secured party under the Uniform Commercial Code and other applicable statutes of the place or places where the Mortgaged Property is located, it being hereby agreed that ten (10) days' notice as to the time and place of any sale shall be reasonable.

40. That no extension of the time or modification of the terms of payment of the Promissory Note and no release of any part or parts of the Mortgaged Property by the Mortgagee shall release, relieve or discharge the Mortgagor from the payment of any sums hereby secured but in such event the Mortgagor shall nevertheless be liable to pay such sums according to the terms of such extension or modification unless specifically released and discharged in writing by the Mortgagee. Any acceptance by the Mortgagee of late or part payment of any installment of principal or interest, or both, or of late or part performance of any covenant or delay by the Mortgagee for any period of time in exercising the option to mature the entire debt secured hereby shall not operate as a waiver or forfeiture of the right to exercise such option to mature the entire debt secured hereby. THE MORTGAGOR ACKNOWLEDGES THAT THE FOREGOING MAY RESULT IN A MODIFICATION OF THE COMMON LAW RULES OF WAIVER AND ESTOPPEL. THE MORTGAGOR AFFIRMATIVELY STATES THAT SUCH MODIFICATION IS INTENDED, IT BEING IN THE BEST INTEREST OF THE MORTGAGOR TO PERMIT THE MORTGAGEE FLEXIBILITY IN RESPONDING TO VARIOUS SITUATIONS. As an example, it is to the Mortgagor's benefit that the Mortgagee not be obligated to accelerate the obligations of the Mortgagor secured hereby where the Mortgagor fails to make a payment when it is due; rather the Mortgagee may, but shall not be obligated to, permit said late payment without prejudicing the Mortgagee's rights hereunder.

41. A. Hazard Insurance. Mortgagee shall keep the improvements now existing or hereafter erected on the Property insured against loss or damage by fire, hazards included within the term "extended coverage", windstorm, flood, and any other hazards for which mortgagee requires insurance in the full insurable value thereof. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Mortgagee's approval which shall not be unreasonably withheld. All insurance policies and renewals shall be acceptable to Mortgagee and shall include a standard mortgagee clause in favor of the Mortgagee and shall be delivered to Mortgagee. Mortgagee shall have the right to hold the policies and renewals. Mortgagor shall pay all premiums and charges for the maintenance

and renewal of the insurance, and shall furnish the Mortgagee with receipts and proofs thereof not less than 10 days before the expiration thereof, without notice or demand from Mortgagee. If Mortgagor fails to do so, then Mortgagee, without waiving the option to foreclose, may obtain such insurance for the protection of the Mortgagee, and any expenses reasonably incurred by Mortgagee in so doing shall become part of the indebtedness secured hereby, shall, at the option of Mortgagee, become immediately due and payable, and shall bear interest at the highest lawful rate specified in any note evidencing the indebtedness secured hereby. In the event of loss or damage, Mortgagor shall give prompt written notice to the Insurance carrier and Mortgagee, and the insurance proceeds shall be applied by Mortgagee to the reduction of the indebtedness secured hereby, or to the restoration and/or repair of the Property damaged, if the restoration or repair is economically feasible and Mortgagee's security is not lessened, at the option of Mortgagee, with any excess paid to Mortgagor. If Mortgagee abandons the Property, or does not answer within 10 days a notice from Mortgagee that the insurance carrier has offered to settle a claim, then Mortgagee may (i) collect the insurance proceeds and shall have the full power to settle or compromise claims under all policies, (ii) demand, receive and receipt for all monies becoming payable thereunder, and/or (iii) use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 10-day period will begin when the notice is given. Any application of proceeds to principal shall not extend or postpone the due date of any payments due under the Loan Documents or change the amount of the payments. If the Property is acquired by Mortgagee by foreclosure, deed in lieu of foreclosure in full or partial satisfaction of the indebtedness secured hereby or otherwise, Mortgagor's right to any and all insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Mortgagee to the extent of the sums secured by this Mortgage immediately prior to the acquisition. Each policy of insurance required under this Mortgage shall be non-cancellable without at least 30 day's written notice to Mortgagee.

B. Liability Insurance. Mortgagor shall at its sole expense obtain and deliver to, and maintain for the benefit of Mortgagee until all sums due under the Loan Documents are paid in full, liability insurance in such amounts as may be required by Mortgagee from time to time. Mortgagor shall pay promptly when due, all premiums on the insurance policies and renewals.

42. The Mortgagor expressly represents to the Mortgagee that there is no, nor will there be in the future, asbestos insulation in the improvements to the real property encumbered by this Mortgage. The Mortgagor agrees to indemnify, defend and hold the Mortgagee harmless from and against any loss, cost or expense incurred by the Mortgagee, including without limitation attorneys' fees at both trial and appellate levels, incurred by the Mortgagee as a result of such present or future existence of asbestos insulation.

43. Mortgagee shall have the right to set off and charge against any bank account of Mortgagor on deposit with Mortgagee for interest and principal due and payable, as provided in the Note, along with additional monies which may accrue pursuant to the terms hereof, as the same becomes due.

44. If at any time the State of Florida shall determine that the Intangible Tax paid in connection with this Mortgage is insufficient and/or that the Documentary Stamps affixed to the Note or hereto are insufficient and that additional Intangible tax should be paid and/or that additional Documentary Stamps should hereafter be affixed, the Mortgagor shall pay for the same, together with any interest or penalties imposed in connection with such determination, and the

SG

amount of money needed to pay for such tax stamps and penalties shall, until such tax is paid and stamps are purchased and affixed by Mortgagor, be a portion of the indebtedness secured by this Mortgage and bear interest from the date of such payment by Mortgagee, if Mortgagee elects to pay same, at the highest lawful rate.

45. Mortgagee has no obligation in connection with the Mortgaged Property, except to advance the proceeds of the Note as therein provided. Any inspection by Mortgagee of the Mortgaged Property, or other activities in the nature thereof shall only be for the sole and separate benefit of Mortgagee and for the purpose of protecting the security of Mortgagee. Mortgagor has no right to rely on any procedures required by Mortgagee. Mortgagee or its agent may make reasonable entries upon inspections of the Property at all reasonable times and in a reasonable manner, both before and after default.

46. The following notice is given pursuant to Section 404.056 of the Florida Statutes: Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who were exposed to it over time. Levels of radon that exceed federal and state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be obtained from your county public health unit.

47. Mortgagor waives all right of homestead exemption (if any) in the Property.

48. Expenses. Mortgagor shall pay, or reimburse Mortgagee for all costs, charges and expenses, including reasonable attorney's fees and paralegal charges, including appellate proceedings, and disbursements, and costs of abstracts of title incurred or paid by Mortgagee in any action, proceeding or dispute in which Mortgagee is made a party or appears as a party plaintiff or party defendant because of the failure of the Mortgagor promptly and fully to perform and comply with all conditions and covenants of this Mortgage and the Note secured hereby, including but not limited to, the foreclosure of this Mortgage, condemnation of all or part of the Mortgaged Property, or any action to protect the security thereof. All costs, charges and expenses so incurred by Mortgagee shall become immediately due and payable whether or not there be notice, demand, attempt to collect or suit pending, together with interest thereon at the highest rate permitted by Florida law from the date incurred until paid by Mortgagor. The amounts so paid or incurred by Mortgagee shall be secured by the lien of this Mortgage. This Mortgage shall also secure all fees, charges, costs, reimbursements and other sums, if any, that are provided for in the Note or other agreement between Mortgagor and Mortgagee and would be due by Mortgagor to Mortgagee upon prepayment of the Note, whether such prepayment is voluntary or arises from Mortgagee's acceleration of the Note due to a default thereunder or hereunder.

49. That Borrower shall defend, indemnify and hold Lender, Polonio llc, ("Indemnitee") harmless against and from any and all liabilities, obligations, losses, damages, penalties, actions, causes of action, judgments, suits, claims, costs and expenses, however caused, of any kind or nature whatsoever, including the reasonable fees and expenses of counsel to Indemnitees, which may be imposed on, incurred by or asserted (whether actually asserted in any proceeding or threatened, and whether or not such Indemnitee is a party thereto) against such Indemnitee (collectively "Losses") in any manner relating to, connected with or arising out of the negotiation, execution, delivery or performance of this Mortgage or any of the other Loan Documents; provided, however, that Borrower's obligations to indemnify shall not extend to any Losses arising as a result of the gross negligence, willful misconduct or unlawful conduct of an Indemnitee as determined in a final judgment by a court of competent jurisdiction.

SG

50. **MORTGAGOR AND MORTGAGEE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY AND ALL RIGHT EITHER MAY HAVE TO A TRIAL BY JURY IN RESPECT TO ANY LITIGATION, INCLUDING BUT NOT LIMITED TO, ANY CLAIMS, CROSS CLAIMS OR THIRD PARTY CLAIMS ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS MORTGAGE, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS CONTEMPLATED HEREIN. MORTGAGOR AND MORTGAGEE HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE MORTGAGEE NOR THE MORTGAGEE'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT THE MORTGAGEE WOULD NOT, IN THE EVENT OF SUCH LITIGATION, SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. MORTGAGOR ACKNOWLEDGES THAT THE MORTGAGEE HAS BEEN INDUCED TO ENTER INTO THIS LOAN, INCLUDING THIS MORTGAGE, BY, INTER ALIA, THE PROVISIONS OF THIS PARAGRAPH.**

**THIS IS A BALLOON MORTGAGE AND THE FINAL PRINCIPAL PAYMENT OR THE PRINCIPAL BALANCE DUE UPON MATURITY IS $220,000.00, TOGETHER WITH ACCRUED INTEREST, IF ANY, AND ALL ADVANCEMENTS MADE BY THE MORTGAGEE UNDER THE TERMS OF THIS MORTGAGE.**

IN WITNESS WHEREOF, this Instrument has been executed on October 7, 2022.

Signed, sealed and delivered
in the presence of:

[signature]

Print Name: Elizabeth Valdes

Loni Gonzalez [signature]

Print Name: [signature]

Borrower: CITY TRUST INVESTMENTS LLC
a Florida limited liability company,

By: [signature]
SANTOS GONZALEZ, Manager

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of X physical presence or __ online notarization, this 7th day of October 2022 by SANTOS GONZALEZ in his capacity as Manager of CITY TRUST INVESTMENTS LLC. He is ___ personally Known OR ___ Produced FDL as identification.

[signature]
Notary Public Signature
Printed Name: ____________________

My Commission Expires:

(SEAL)

___ Online Notary (Check Box if acknowledgment done by Online Notarization)

NOTARY PUBLIC STATE OF FLORIDA
ELIZABETH DIAZ VALDEZ
MY COMMISSION # HH 113236
EXPIRES: June 14, 2025
Bonded Thru Notary Public Underwriters

This Instrument Was Prepared By and
Record & Return to:
TROY NADER, ESQ.
LAW OFFICES OF TROY NADER
14335 SW 120TH ST.
SUITE 103
MIAMI, FLORIDA 33186

ASSIGNMENT OF LEASES AND RENTS

LOAN#:

THIS ASSIGNMENT OF LEASES AND RENTS (the "Assignment") is made as of October 7th 2022 by CITY TRUST INVESTMENTS LLC, a Florida limited liability company, whose address is 27581 South Dixie Hwy., Suite 2, Homestead, FL 33032 ("Assignor"), to POLONIO LLC, a Florida limited liability company, whose address is 1657 SW 108th Way, Davie, FL 33324, their successors and assigns ("Assignee"):

WITNESSETH:

WHEREAS, Assignor, jointly and severally, is indebted (the "indebtedness") to Assignee in the principal sum of TWO HUNDRED TWENTY THOUSAND DOLLARS ($220,000.00), together with interest thereon, as evidenced by that certain Promissory Note of even date in the principal sum of TWO HUNDRED TWENTY THOUSAND DOLLARS ($220,000.00) (the "Note"), executed by Mortgagor and delivered to Mortgagee; and

WHEREAS, contemporaneously and of even date herewith and to secure the Note, Assignor executed and delivered to Assignee that one certain Mortgage and Security Agreement (the "Mortgage"), dated of even date herewith, from Assignor to Assignee, covering certain real property in MIAMI-DADE County, Florida, more fully described as:

**Parcel 1:**

**Lot 25, Block 8, Seapines, according to the Plat thereof as recorded in Plat Book 100, page(s) 6, of the Public Records of Miami-Dade County, Florida.**

A/K/A: 28152 SW 142nd Ct, Homestead, FL 33033

**Parcel 2:**

**Lot 12, Block 4, Seapines, according to the Plat thereof as recorded in Plat Book 100, page(s) 6, of the Public Records of Miami-Dade County, Florida.**

A/K/A: 28091 SW 143rd Ct, Homestead, FL 33033

Said property along with the improvements constructed or to be constructed thereon, shall hereinafter be referred to collectively as the "Mortgaged Property";

WHEREAS, the Mortgaged Property is and, from time to time, may be leased, in whole or in part, to certain third parties; and

WHEREAS, the parties hereto wish to provide additional security for Assignor's repayment of the obligation evidenced by the Note;

NOW, THEREFORE, for and in consideration of the loan made to Assignor by Assignee and for other good and valuable consideration, the parties do hereby agree as follows:

## ARTICLE I: ASSIGNMENT

1.1. Assignor does hereby grant, transfer and assign unto Assignee the following:

(a) All present and future leases, written or oral, and all agreements for the use or occupancy of any portion of the Mortgaged Property, and any renewals, extensions or substitutions of said leases and agreements and any and all further leases or agreements, including subleases thereunder, upon or covering the use or occupancy of all or part of the Mortgaged Property, all of such leases, agreements, subleases and tenancies, whether now or in the future existing, being hereinafter collectively referred to as the "Leases";

(b) Any and all guaranties of payment or performance by lessees under any of the Leases; and

(c) The immediate and continuing right to collect and receive all of the rents, income, receipts, revenues, issues and profits now due or which may become due or to which Assignor may now or hereafter become entitled or may demand or claim, arising or issuing from or out of the Leases or from or out of the Mortgaged Property, or any part thereof, including without limitation, minimum rents, additional rents, percentage rents, common area maintenance charges, parking charges (including monthly rental or parking spaces), tax and insurance premium contributions, liquidated damages following default, premiums payable by any lessee upon the exercise of any cancellation privilege provided for in any of the Leases, and all proceeds payable under any policy of insurance covering the loss of rent resulting from untenantability caused by destruction or damage of the Mortgaged Property, together with any and all rights and claims of any kind which Assignor may have against any lessee under the Leases or against any subtenants or occupants of the Mortgaged Property, all such monies, rights and claims in this paragraph described being hereinafter referred as the "Rents." BORROWER AND NOTE HOLDER INTEND THIS ASSIGNMENT OF RENTS TO BE IMMEDIATELY EFFECTIVE AND TO CONSTITUTE AN ABSOLUTE PRESENT AND UNCONDITIONAL ASSIGNMENT AND NOT AN ASSIGNMENT FOR ADDITIONAL SECURITY ONLY. THE PROVISIONS OF THIS PARAGRAPH 1.1.c. SHALL CONTROL OVER ANY CONFLICTING OR INCONSISTENT TERM OR PROVISION OF THE SECURITY INSTRUMENT. IT SHALL NEVER BE NECESSARY FOR NOTE HOLDER TO INSTITUTE LEGAL PROCEEDINGS OF ANY KIND OR TO TAKE ANY FURTHER ACTION WHATSOEVER TO ENFORCE THE PROVISIONS OF THIS PARAGRAPH 1.1.c.

1.2. Assignor hereby authorizes and directs the lessees and tenants of the Mortgaged Property that, upon written notice from Assignee, all Rents shall be made directly to Assignee as they become due. Assignor hereby relieves the lessees and tenants from any liability to Assignor by reason of such payments being made to Assignee. This is intended as, and is, a present assignment; PROVIDED, HOWEVER, that Assignee hereby grants to Assignor a license to collect and receive all Rents. Such license shall be revocable by notice from Assignee to Assignor at any time after the occurrence of a "Default" (as defined in the Mortgage). Notification may be given to lessees and tenants at any time during which a Default is continuing. Such notice shall become effective three (3) day after being deposited in the United States mail, certified or registered, postage prepaid, addressed to Assignor at its address in Section 5.4 and to lessees at their respective addresses at the Mortgaged Property.



SG

1.3. This Assignment is made to secure the payment of any and all indebtedness, incurred under the Note, together with interest as provided therein, and all other amounts due thereunder and under all documents securing the Note. Any default under this Assignment shall constitute a default under each of the other documents evidencing or securing the Note.

ARTICLE II: REPRESENTATIONS AND WARRANTIES

To induce Assignee to loan funds evidenced by the Note, Assignor hereby represents and warrants to Assignee that:

2.1. Assignor has good title to the Leases and Rents hereby assigned and good right to assign the same, and that no other person, limited liability company or entity has any right, title or interest therein;

2.2. Assignor has duly and punctually performed all and singular the terms, covenants, conditions and warranties of the existing Leases on Assignor's part to be kept, observed and performed up to the date hereof;

2.3. Assignor has not previously sold, assigned, transferred, mortgaged or pledged the Leases or the Rents, whether now due or hereafter to become due;

2.4. Any rents due for occupancy for any period subsequent to the date hereof have not been collected for more than one (1) month in advance of accrual and payment of any Rents has not otherwise been anticipated, waived, released, discounted, set-off or otherwise discharged or compromised;

2.5. Assignor has not received any funds or deposits from any lessee in excess of one month's rent for which credit has not already been made on account of accrued Rents; and
2.6. No lessee under any existing Lease is in default of any of the terms thereof.

ARTICLE III: ASSIGNOR'S COVENANTS

So long as this assignment remains in effect, Assignor covenants and agrees that (unless Assignee shall otherwise consent in writing):

3.1. Assignor shall observe, perform and discharge all obligations, covenants and warranties of lessor provided for under the terms of the Leases, and shall give prompt notice to Assignee in the event that Assignor fails to observe, perform and discharge such obligations, covenants and warranties;

3.2. Assignor shall appear in and defend any action or proceeding arising under, occurring out of, or in any manner connected with, the Leases or the obligations, duties or liabilities of Assignor and any lessee thereunder, and, upon request by Assignee, shall do so in the name and on behalf of Assignee but at the expense of Assignor, and Assignor shall pay all costs and expenses of Assignee, including reasonable attorneys' fees, in any action or proceeding in which Assignee may appear;

3.3. Assignor shall not receive or collect any Rents from any of the Leases for a period of more than one (1) month in advance;

3.4. Assignor shall not pledge, transfer, assign, mortgage, encumber or allow to be encumbered any Leases or future payments of the Rents;

3.5. Except in the ordinary course of business, Assignor shall not waive, discount, set-off, compromise, or in any manner release or discharge any lessee of any part of the Mortgaged Property, of and from any obligations, covenants, conditions and agreements by said lessee to be kept, observed and performed, including the obligation to pay rent in the manner and at the place and time specified in any Lease;

3.6. Except in the ordinary course of business, Assignor shall not terminate or consent to any surrender of any Lease, or modify or in any way alter the terms thereof, without the prior written consent of Assignee, and shall use all reasonable efforts to maintain each of the Leases in full force and effect during the term of the Mortgage;

3.7. Assignor shall not subordinate any Lease to any mortgage (other than to the Mortgage) or other encumbrance, or permit, consent or agree to such subordination;

3.8. At the request of Assignee, Assignor shall assign and transfer to Assignee any and all subsequent Leases and execute and deliver all such further assurances and assignments as Assignee shall from time to time require;

3.9. Assignor covenants to hold all Rents collected or received by it after a Default in trust for the use and benefit of Assignee; and

3.10. In the case of residential Leases, Assignor shall not modify the form of Lease submitted to Assignee without Assignee's prior written approval.

## ARTICLE IV: ASSIGNEE'S RIGHTS

Upon or at any time after a default in the payment of any indebtedness evidenced by the Note or the occurrence of a Default, Assignee, at its option and without notice or regard to the adequacy of the security for the indebtedness secured hereby, shall have the right, power and authority to exercise and enforce any or all of the following rights and remedies:

4.1. To terminate the license granted to Assignor in Section 1.2 hereof to collect the Rents as aforesaid, and, without taking possession, in Assignee's own name, demand, collect, receive, sue for, attach and levy the Rents, to give proper receipts, releases and acquittances therefor and after deducting all necessary and reasonable expenses of collection, including reasonable attorneys' fees, to apply the net proceeds thereof, together with any funds of Assignor deposited with Assignee, upon any indebtedness evidenced by the Note in such order as Assignee may determine;

4.2. To declare all sums secured hereby immediately due and payable and, at its option, exercise all of the rights and remedies provided for in the Note, the Mortgage, the terms of this Assignment or any other instrument or document evidencing or securing the Note;

4.3. Without regard to the adequacy of the security for the repayment of the Note, with or without any action or proceeding, through any person or by any agent, or by the trustee(s) under the Mortgage, or by a receiver to be appointed by court, and irrespective of Assignor's possession, to enter upon (but such entry is not a condition to the effectiveness of this Assignment), take possession of, manage and operate the Mortgaged Property, or take part thereof, make, modify,



SG

enforce, cancel or accept the surrender of any Lease, remove or evict any lessee, increase or reduce rents, decorate, clean and make repairs, and otherwise do any act or incur any costs or expenses that Assignee shall deem proper to protect the security hereof, as fully and to the same extent as Assignor could do if in possession of the Mortgaged Property, and in such event to apply any funds so collected to the operation and management of the Mortgaged Property, but in such order as Assignee shall deem proper, and including payment of reasonable management, brokerage and attorneys' fees, payment of any indebtedness evidenced by the Note, and the maintenance, without interest thereon, of a reserve or replacement fund.

The collection of the Rents and application thereof and/or the entry upon and taking of possession of the Mortgaged Property as contemplated in this Article shall not cure or waive any default (except to the extent so cured), waive, modify or affect any notice of default under the Note or this Assignment or invalidate any act done pursuant to such notice, and the enforcement of such right or remedy by Assignee, once exercised, shall continue for so long as Assignee shall elect, notwithstanding that its collection of the Rents may have cured for a time the original default. If, after exercising rights under this Article, Assignee shall thereafter elect to discontinue the exercise of such right or remedy, the same or any other right or remedy under this Article may be reasserted at any time and from time to time following any subsequent default. None of the rights or remedies of Assignee under the Note or the Mortgage shall be delayed or in any way prejudiced by virtue of this Assignment, and this Assignment is intended to be cumulative of and in addition to all other rights, remedies and securities granted to Assignee.

ARTICLE V: MISCELLANEOUS

5.1. This Assignment shall further secure any extensions, renewals and increases of the Note and any note or notes supplemental thereto and shall remain in effect as long as any part of the indebtedness evidenced by the Note or any extensions, renewals, increases or supplemental notes remain unpaid, and upon payment in full of such indebtedness, this Assignment shall become and be void and of no effect and Assignee shall execute such releases hereof as Assignor shall request.

5.2. Assignee shall not be liable for any loss sustained by Assignor resulting from Assignee's failure to let the Mortgaged Property, or any part thereof, after default or from any other act or omission of Assignee in managing the Mortgaged Property, or any part thereof. Assignee shall not be obligated to perform or discharge, any obligation, duty or liability under the Leases or under or by reason of this Assignment, and Assignor shall, and does hereby agree to, indemnify Assignee for, and to hold Assignee harmless from, any and all liability, loss or damage which may or might be incurred under the Leases or under or by reason of this Assignment, and from any and all claims and demands whatsoever which may be asserted against Assignee by reason of any alleged obligations or undertakings on its part to perform or discharge any of the terms, covenants or agreements contained in the Leases. Should Assignee incur any such liability under the Leases or under or by reason of this Assignment or in defense of any such claims or demands, the amount thereof, including costs, expenses and reasonable attorneys' fees shall be secured hereby and Assignor shall reimburse Assignee therefor immediately upon demand, and upon the failure of Assignor so to do Assignee may, at its option, declare all sums secured hereby and evidenced or secured by the Note and Mortgage immediately due and payable. It is further understood that this Assignment shall not operate to constitute Assignee as mortgagee in possession of the Mortgaged Property, place responsibility for the control, care, management or repair of the Mortgaged Property upon Assignee, or for the carrying out of any of the terms and conditions of the Leases; nor shall it operate to make Assignee responsible or liable for any waste committed on the Mortgage Properties by the lessees or any other parties, or for any dangerous



SG

or defective condition of the Mortgaged Property, or for any negligence in the management, upkeep, repair or control of the Mortgaged Property, resulting in loss, injury or death to any lessee, licensee, employee or stranger.

5.3. This Assignment shall be governed by and be construed under the laws of the State of Florida.

5.4. Except for notices pursuant to Section 1.2 hereof, all notices, requests, demands or other communications hereunder shall be in writing and shall be addressed, if to Assignor or Assignee, to the party to be notified at the address set forth in the preamble hereof; or to such other address as either party may designate in writing, and to tenants, to their respective addresses at the Mortgaged Property. All notices under this Section 5.4 shall be effective: (a) three (3) days after deposit in the U.S. Mail, postage prepaid, registered or certified mail, return receipt requested; (b) upon delivery, if delivered in person to the address set forth above; or (c) upon delivery, if sent by commercial express service, such as Federal Express; except that notices of change of address shall be effective ten (10) days after the effective date of all other notices hereunder.

5.5. For the purpose of curing any default under any of the Leases, Assignee may, but shall not be obligated to, do any act, pay any sum or execute any document in the name of Assignor or as Assignor's attorney-in-fact, as well as in Assignee's own name, as Assignee in Assignee's discretion may determine. Assignor hereby irrevocably appoints Assignee as Assignor's true and lawful attorney-in-fact, in Assignor's name or otherwise, to do and perform all acts, pay any sum and/or execute any and all documents that may, in the opinion of Assignee, be necessary or desirable to cure any such default or preserve any right of Assignor under any of the Leases, to preserve any rights of Assignor whatsoever or to protect Assignee's security interest. This appointment is coupled with an interest, is irrevocable, and shall not terminate until Assignor has performed all of its obligations, including the payment of all sums due to Assignee secured hereby.

5.6. All of Assignor's right, title and interest assigned hereunder may be reassigned by Assignee and any subsequent Assignee, and the term "Assignee" as used herein includes any subsequent Assignee.

IN WITNESS WHEREOF, Assignor has caused this Assignment to be duly executed as of the day and year first written above.

Witnesses:

Lory Gonzalez
Print Name:

Print Name: Elizabeth Valdes

Assignor: CITY TRUST INVESTMENTS LLC, a Florida limited liability company

By: 
SANTOS GONZALEZ, Manager

STATE OF FLORIDA )
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me by means of ✓ physical presence or __ online notarization, this 7th day of October 2022 by SANTOS GONZALEZ in his capacity as Manager of CITY TRUST INVESTMENTS LLC. He is ___ personally Known OR ✓ Produced FDL as identification.

____________________ My Commission Expires:
Notary Public Signature
Printed Name: ____________________ (SEAL)

___ Online Notary (Check Box if acknowledgment done by Online Notarization)

NOTARY PUBLIC STATE OF FLORIDA
ELIZABETH DIAZ VALDEZ
MY COMMISSION # HH 113236
EXPIRES: June 14, 2025
Bonded Thru Notary Public Underwriters