**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:

| | |
|---|---|
| CITY TRUST INVESTMENTS LLC, LORETA INVESTMENTS, LLC, GAIN 11 INVESTMENTS, LLC, 14445 SW 289 ST LLC; AND CITYWIDE PROPERTY MANAGEMENT LLC, | Case No.: 24-14100-PDR<br><br>(substantively consolidated)<br><br>Chapter 7 |
| Debtors.<br>_______________________________________/ | |

**TRUSTEE'S OMNIBUS RESPONSE AND OBJECTION TO THE MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY FILED BY H2ML, LLC, JEFFREY MILLS, AND POLONIO, LLC**

MARCIA T. DUNN, solely as Chapter 7 Trustee (the "Trustee") of the substantively consolidated bankruptcy estate (the "Estate") of City Trust Investments LLC, Loreta Investments, LLC, Gain 11 Investments, LLC, 14445 SW 289 ST LLC, and Citywide Property Management LLC (collectively, the "Debtors"), by and through undersigned counsel, files this omnibus response and objection (the "Response") to (i) the Motion for Relief from Automatic Stay filed by H2ML, LLC [D.E. 777] (the "H2ML Motion"), (ii) the Motion for Relief from Automatic Stay filed by Jeffrey Mills [D.E. 779] (the "Mills Motion"), and (iii) the Motion for Relief from Automatic Stay filed by Polonio, LLC [D.E. 780] (the "Polonio Motion" and, collectively with the H2ML Motion and the Mills Motion, the "Motions"), each filed by H2ML, LLC, Jeffrey Mills, and Polonio, LLC (collectively, the "Movants"). In support of this Response, the Trustee states as follows:

## PRELIMINARY STATEMENT

1. The Movants have never taken this bankruptcy case seriously. Represented throughout by the same counsel and proceeding on the same copy-and-paste papers, the Movants

have now made four separate attempts to extract themselves from, or to destroy, a case whose burdens they have never shouldered. Each attempt has failed. The most recent attempt before this one resulted in an award of sanctions against all three of them, jointly and severally.

2. The Movants first sought stay relief in June 2024. All three motions were denied for lack of prosecution because the Movants did not bother to pursue them. *See* D.E. 114; D.E. 115; D.E. 116. All three renewed. The renewed motions of H2ML and Polonio were denied following a hearing in October 2024. *See* D.E. 168; D.E. 169. Mills' renewed motion was granted, but for one express and limited purpose: to allow Mills "to get through any title issues/litigation," with Mills required to return to this Court for additional relief before proceeding *in rem*. *See* D.E. 170, ¶ 3.

3. Mills used that relief and obtained exactly what he asked for. He litigated the title issues affecting his collateral in his state court foreclosure action and resolved them by a settlement agreement effective July 23, 2025. At that point, paragraph 3 of this Court's Order required him to return here before proceeding *in rem*. He did not return. He waited nearly thirteen more months – until the eve of the hearing on the Trustee's Sale Motion (as defined herein) – while the Trustee insured, managed, marketed, and contracted to sell the very property he now seeks to foreclose.

4. The Movants then moved to dismiss the case outright on grounds this Court previously rejected. They were sanctioned $8,621.00, jointly and severally, under 11 U.S.C. § 105(a). *See* D.E. 398; D.E. 399; D.E. 646. The Movants did not pay the award when it came due. Only after the Trustee filed a notice of non-compliance and moved to hold them in contempt did the Movants pay, whereupon the Trustee withdrew the motion. *See* D.E. 664, 669.

5. H2ML and Polonio, for their part, watched. Both hold mortgages against Properties that were directly at issue in the Menendez Adversary (as defined herein) in which the Trustee

litigated and defeated a competing claim of ownership – a claim that, had it succeeded, would have voided their liens along with the Debtor's title. Their counsel, and their title counsel, appeared regularly at hearings in this case throughout that litigation and asked the Trustee's professionals for updates on its progress. Neither, however, filed a notice of appearance in that proceeding, moved to intervene, took or defended a deposition, attended any part of the five-day trial, or contributed a dollar to its cost. They were content to let the Trustee take the laboring oar in defense of their own liens. The Trustee did all of it, and the Estate paid for all of it.

6. On April 6, 2026, following a five-day trial, this Court entered Final Judgment in the Menendez Adversary in the Trustee's favor, confirming the Estate's title and discharging the Notices of Lis Pendens that had clouded the properties for years. The Trustee then brought the properties to market, secured a purchaser, and filed the Sale Motion.

7. Only then did the Movants seek to enforce their liens. Four months after the Final Judgment in the Menendez Adversary, and on the eve of the hearing on the Sale Motion, the Movants filed the Motions. Nothing has changed except this: the collateral is now marketable, its value has been established, and the Estate incurred the substantial cost to make all of this happen.

8. The Motions should be denied. The Movants (i) are adequately protected by a pending, Court-supervised sale under which their liens attach to the proceeds; (ii) have not shown an absence of equity; and (iii) the Motions are the latest installment in a course of conduct this Court has already found sanctionable. The Trustee respectfully requests that the Court deny the Motions and award the Trustee her reasonable attorneys' fees and costs incurred in opposing them pursuant to 11 U.S.C. § 105(a).

## BACKGROUND

### A. The Case, the Properties, and the Movants' Asserted Liens.

9. On April 26, 2024 (the "Petition Date"), City Trust Investments LLC commenced this case by filing a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

10. On September 3, 2024, the Court entered an Order granting the United States Trustee's motion to convert the case to Chapter 7, and Marcia T. Dunn was appointed Chapter 7 Trustee. The Movants did not object to the motion to convert, which was served upon their counsel on August 7, 2024. *See* D.E. 135.

11. On September 23, 2025, the Court entered an Order substantively consolidating Loreta Investments, LLC, Gain 11 Investments, LLC, 14445 SW 289 ST LLC, and Citywide Property Management LLC into the Estate. *See* D.E. 623.

12. The Estate owns seven parcels of residential real property located in Homestead, Florida (collectively, the "Properties"). The Movants assert first mortgage liens against four of the seven Properties: H2ML asserts a lien against 28124 SW 142nd Court; Mills asserts a lien against 14266 SW 283rd Street; and Polonio asserts a blanket lien against 28152 SW 142nd Court and 28091 SW 143rd Court. The remaining Properties are encumbered by liens held by parties who have not sought relief from the automatic stay.

### B. The Movants' First Round of Stay Relief Motions Was Denied for Lack of Prosecution.

13. On June 5, 2024, Polonio and Mills each filed a motion for relief from the automatic stay. *See* D.E. 43; D.E. 44. On June 10, 2024, H2ML did the same. *See* D.E. 49.

14. The Movants did not prosecute those motions. On July 19, 2024, following a July 12, 2024 hearing, the Court denied each of them without prejudice for lack of prosecution. *See* D.E. 114 (H2ML); D.E. 115 (Mills); D.E. 116 (Polonio).

### C. The Renewed Motions Were Denied as to H2ML and Polonio, and Granted as to Mills for the Sole Purpose of Resolving Title.

15. All three Movants renewed. *See* D.E. 94 (Mills); D.E. 95 (H2ML); D.E. 96 (Polonio).

16. By orders entered October 3, 2024, the Court denied the renewed motions of H2ML and Polonio. *See* D.E. 168; D.E. 169.

17. The Court granted the Mills renewed motion by Order entered October 8, 2024, but expressly and narrowly limited the relief it afforded. *See* D.E. 170. Paragraph 3 of that Order provides in full: "This Order is entered for the sole purpose of allowing Secured Creditor to get through any title issues/litigation. If title is determined to be in the name of the Debtor, then Secured Creditor needs to come back before this Court for additional stay relief before proceeding in rem against the subject property and obtaining a foreclosure judgment." *Id.* at ¶ 3.

### D. Mills Obtained the Relief He Sought, Resolved Title, and Then Waited Thirteen Months to Return.

18. Unlike H2ML and Polonio, Mills acted upon the relief he obtained. Mills litigated the title issues affecting 14266 SW 283rd Street in his state court foreclosure action, styled *Jeffrey Mills v. City Trust Investments, LLC, et al.*, Case No. 2023-CA-024275 (Fla. 11th Cir. Ct.).

19. Those title issues were ultimately resolved in the Debtor's favor. The competing claim to 14266 SW 283rd Street was asserted by Hector S. Serrano and Mirian Serrano as counter-plaintiffs in Mills' own foreclosure action, styled *Jefferey Mills v. City Trust Investments, LLC, Hector Serrano and Mirian Serrano, et al.*, Case No. 2023-024643-CA-01 (Fla. 11th Jud. Cir. Ct.,

Miami-Dade County.) (the "State Court Foreclosure Action"). Mills and the Serranos resolved that dispute by Mediated Settlement Agreement effective July 23, 2025 (the "MSA"). *See Jeffrey Mills's Notice of Filing and Declaration as to Default Under Settlement Agreement* filed in the State Court Foreclosure Action, a copy of which is attached hereto as **Exhibit A**.

20. Under the MSA, the Serranos were required to pay a sum certain within 120 days of the effective date, failing which they "expressly stipulated and agreed to waive all of their claims and defenses in the instant case and submit to a Consent Final Judgment of Foreclosure." *Id.* The Serranos did not pay. *Id.* On January 12, 2026, the Serranos and their counsel confirmed in writing that the Serranos would not contest entry of a final judgment of foreclosure if the settlement funds were not tendered by January 15, 2026. *Id.* The funds were not tendered. *Id.*

21. On January 22, 2026, Mills filed in the State Court Foreclosure Action a Declaration as to Default Under Settlement Agreement, establishing the Serranos' default and their waiver of all claims and defenses to the subject property. *Id.* From that date forward, no party other than the Debtor asserted any claim of title to 14266 SW 283rd Street. The condition set out in paragraph 3 of this Court's October 8, 2024 Order – that "title is determined to be in the name of the Debtor" – was therefore satisfied no later than January 2026. Mills nevertheless waited nearly seven more months, until August 17, 2026, to return to this Court, and did so only on the eve of the hearing on the Sale Motion.

### E. The Movants' Motions to Dismiss Were Denied and Resulted in Sanctions Against All Three Movants.

22. Next, the Movants sought to end the case altogether. On March 21, 2025, Polonio filed a motion to dismiss the case [D.E. 312], and H2ML and Mills jointly filed a substantively identical motion [D.E. 314] (together, the "Motions to Dismiss"). The Motions to Dismiss argued unreasonable delay under 11 U.S.C. § 707(a)(1) and bad faith.

23. The Trustee filed a combined response demonstrating, among other things, that the Movants had themselves participated in the case for nearly a year without objection, that they had not opposed conversion, and that they had not responded to the Trustee's Motion to Decline Dismissal [D.E. 163; D.E. 178].

24. Following a hearing on April 29, 2025, the Court denied the Motions to Dismiss and reserved jurisdiction on the Trustee's request for fees. *See* D.E. 398; D.E. 399.

25. The Trustee's counsel filed the required memorandum of law in support of the fee request. *See* D.E. 432. The Movants filed no response to it.

26. On December 19, 2025, the Court entered an Order awarding the Trustee's counsel $8,621.00 in attorneys' fees incurred in connection with the Motions to Dismiss, to be paid by Polonio, H2ML, and Mills, jointly and severally. *See* D.E. 646. The award was made under 11 U.S.C. § 105(a).

**F. The Trustee Cleared Title in the Menendez Adversary and Brought the Properties to Sale, at the Estate's Sole Expense.**

27. In December 2024, the Trustee commenced an adversary proceeding against Carlos Menendez, *Dunn v. Menendez*, Adv. Pro. No. 24-01432-LMI (the "Menendez Adversary"), to defeat a competing claim of ownership to six of the Properties and to discharge the Notices of Lis Pendens that Menendez had recorded and re-recorded against them over a period of years.

28. Menendez contended that the deeds through which the Debtor acquired title were forged or executed by a grantor lacking capacity, and therefore void. Had he prevailed, the Debtor would have held no title to encumber, and the mortgage liens asserted against those six Properties – including those of H2ML and Polonio – would have failed with it. Mills' collateral, 14266 SW 283rd Street, was not among them.

29. Neither H2ML nor Polonio took any part in the Menendez Adversary. Neither appeared, intervened, filed any pleading, participated in discovery, attended any portion of the five-day trial, or contributed any portion of the fees and costs of prosecuting it notwithstanding that a judgment for Menendez would have voided the deeds through which the Debtor acquired title and, with them, the mortgage liens H2ML and Polonio assert.

30. On April 6, 2026, following trial, the Court entered Final Judgment in favor of the Trustee on all counts, determining that Menendez holds no legal or equitable interest in the Properties, confirming the Debtor's ownership, and discharging all Notices of Lis Pendens. *See* Adv. Pro. D.E. 204.

31. Throughout her administration, the Trustee has also obtained and paid for insurance covering the Properties, retained a property manager to manage and maintain them, obtained title commitments and lien searches, retained a broker, and marketed the Properties. The Movants have paid for none of it.

32. On August 3, 2026, the Trustee filed her motion to sell the Properties free and clear of liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363, with all valid liens to attach to the applicable sale proceeds [D.E. 764] (the "Sale Motion"). The Sale Motion identifies a stalking horse purchaser and proposes a competitive bidding process and auction. An initial hearing on the Sale Motion is set for August 26, 2026.

**G. The Present Motions.**

33. On August 14, 2026, H2ML filed the H2ML Motion. On August 17, 2026, Mills and Polonio filed the Mills Motion and the Polonio Motion. Each is brought under 11 U.S.C. § 362(d)(1) and asserts, in identical language, that the movant lacks adequate protection.

34. The Motions rely for valuation upon broker price opinions and, in H2ML's case, a printout from the Miami-Dade County Property Appraiser. No Movant has submitted an appraisal, and no Movant has requested an evidentiary hearing on value.

35. No Movant discloses to the Court that it has previously sought the same relief and been denied, that it moved unsuccessfully to dismiss this case, or that it has been sanctioned in connection with the dismissal motion.

36. The Mills Motion in particular does not cite this Court's October 8, 2024 Order, does not acknowledge the condition set out in paragraph 3 of that Order, does not disclose that the title issues that Order was entered to permit Mills to address were resolved, and does not account for the months that elapsed thereafter. It is instead a fresh motion under section 362(d)(1), indistinguishable in substance from those filed by H2ML and Polonio.

## ARGUMENT

### A. The Movants Are Adequately Protected by the Pending Sale and the Attachment of Their Liens to the Proceeds.

37. Each Motion rests on a single ground: that the movant lacks adequate protection because the value of its collateral is less than the amount of its debt. *See* D.E. 777, ¶¶ 5, 7; D.E. 779, ¶¶ 5, 7; D.E. 780, ¶¶ 5, 7. That premise mistakes what adequate protection protects. A secured creditor's protected interest is the value of its collateral – not the amount it is owed – and the Movants' interest in the Properties is fully protected by a pending, Court-supervised sale under which their liens will attach to the proceeds.

38. The Supreme Court settled the point in *United Savings Association of Texas v. Timbers of Inwood Forest Associates, Ltd.*, 484 U.S. 365 (1988). Construing the adequate protection provisions, the Court held that "[t]he phrase 'value of such creditor's interest' in § 506(a) means 'the value of the collateral,'" and that "the phrase 'value of such entity's interest'

in § 361(1) and (2), when applied to secured creditors, means the same." *Id.* at 371–72. The "interest in property" protected by section 362(d)(1) "does not include a secured party's right to immediate foreclosure." *Id.* at 371.

39. In other words, what adequate protection guards against is *depreciation*. As the *Timbers* Court explained, the secured creditor's interest "is not adequately protected if the security is depreciating during the term of the stay," and a creditor whose collateral is declining in value is entitled "to cash payments or additional security in the amount of the decline." *Id.* at 370 (emphasis added). The measure of adequate protection is the decline, not the deficiency.

40. The Eleventh Circuit adopted that principle in *In re Delta Resources, Inc.*, 54 F.3d 722 (11th Cir. 1995). The court held that a secured creditor's "interest in property which must be adequately protected encompasses the decline in the value of the collateral only, *rather than perpetuating the ratio of the collateral to the debt*." *Id.* at 730 (emphasis added). Reasoning from the rule governing undersecured creditors, the court recognized that "an undersecured creditor may be entitled to adequate protection to ensure against the decline in the value of its collateral," but is not entitled to more. *Id.* at 729 (quoting *Timbers*, 484 U.S. at 382).

41. Under that standard, the Motions fail on their own allegations. Not one of them alleges that the Properties have declined in value, at any time, in any amount. Nor could they. The Trustee has obtained and paid for insurance covering the Properties, retained a property manager to maintain and oversee them, and preserved them throughout her administration (including through the Menendez Adversary).

42. Moreover, the sale itself supplies adequate protection in the form the Bankruptcy Code contemplates. The Sale Motion seeks authority to sell the Properties free and clear of liens under 11 U.S.C. § 363(f), with all valid liens to attach to the applicable sale proceeds with the

same validity, priority, and extent they now enjoy against the Properties. *See* Sale Motion, ¶ 79. That is the accepted mechanism: "[t]he commonly accepted method for adequate[ly] protecting a secured creditor when a sale is authorized under § 363(f) is to order the liens to attach to the proceeds of the sale." *In re Aneco Elec. Constr., Inc.*, 377 B.R. 338, 343 (Bankr. M.D. Fla. 2006) (quoting *In re Collins*, 180 B.R. 447, 452 (Bankr. E.D. Va. 1995)); *see also* 11 U.S.C. § 361(2) (adequate protection may be provided by "an additional or replacement lien").

43. The Movants' real complaint is not that they are inadequately protected but that they are allegedly under secured. Those are different things, and only the first is a ground for relief. Any asserted shortfall between the value of the Properties and the amount of the Movants' debt would exist equally if the Movants foreclosed tomorrow. It is not a consequence of the stay, it is not a decline the Trustee has caused, and it is not something foreclosure would cure. *Timbers* forecloses the argument that an under secured creditor may convert its deficiency into "cause" under section 362(d)(1). 484 U.S. at 371–72.

44. Additionally, the Movants' own filings refute the premise of the Motions. On August 5, 2026, each Movant filed a limited objection to the Sale Motion. *See* D.E. 768 (H2ML); D.E. 769 (Polonio); D.E. 770 (Mills). Each states, in identical language, that "Secured Creditor does not object to the sale of the Property, so long as" (a) its claim "is paid in full (including plus all additional interest, loan charges and advances, fees, etc.), pursuant to an updated payoff statement provided by Secured Creditor at the time of closing," and (b) "Secured Creditor is not surcharged in any way with the costs of the sale, broker commissions, attorneys' fees or any other administrative claims, costs or expenses in connection with the sale of the Property." *Id.* at ¶ 6.

45. That is a concession. A secured creditor that tells this Court it does not object to the sale of its collateral, so long as it is paid from the proceeds, has conceded that payment from the

proceeds adequately protects its interest in that collateral. Now, the same three creditors, through the same counsel, tell this Court the opposite: that the very sale they had declined to oppose leaves them without adequate protection and entitles them to foreclose. Nothing changed in the interval.

46. More telling still, the limited objections make plain what the Motions omit. The Movants' only substantive condition was that they "not [be] surcharged in any way." In other words, their objection was never to the sale; it was to section 506(c). The Motions are that same objection pressed by other means. The Movants do not want to take these Properties back, insure them, manage them, market them, and sell them – a process that would consume months and yield less than the pending sale. They want the sale to proceed and the surcharge not to. Relief from the automatic stay is not a remedy for a secured creditor who is satisfied with the sale but dissatisfied with who bears its cost.

47. Ultimately, the relief the Movants nominally seek would be affirmatively destructive, and their own objections show they have no real appetite for it. The Properties are being marketed and sold as a package pursuant to a bidding process designed to maximize value for all constituents. Permitting three creditors to foreclose piecemeal on four of seven Properties on the eve of the sale hearing would collapse that process, extinguish the stalking horse contract, be detrimental to the other secured creditors benefitting from the sale, and destroy value the Estate expended substantial sums to create.

**B. The Movants Have Not Established the Absence of Equity, and Their Own Loan Documents Show That Equity Exists.**

48. Section 362(g)(1) places the burden of proof on the party requesting relief "on the issue of the debtor's equity in property." 11 U.S.C. § 362(g)(1). Each Motion asserts, in a single conclusory sentence, that there is no equity in the collateral. D.E. 777, ¶ 6; D.E. 779, ¶ 6; D.E. 780, ¶ 6. The Movants arrive at that conclusion by comparing the value of the Properties to

$1,107,574.29, which is the alleged aggregate of the balances they assert as of August 12, 2026. That is the wrong measure.

49. Equity is the difference between the value of the property and the *allowed* claims secured by it. Section 506(b) permits a secured creditor to recover post-petition interest, fees, costs, and charges *only* where the creditor is oversecured, and then only to the extent of its equity cushion. An under secured creditor recovers none of it. *See Timbers*, 484 U.S. at 372–73 (section 506 has the "substantive effect of denying under secured creditors post petition interest on their claims"; "the under secured creditor, who has no such cushion, falls within the general rule disallowing post petition interest"); *In re Delta Res., Inc.*, 54 F.3d at 729–30.

50. The Movants have told this Court they are under secured. That premise is dispositive of their own arithmetic: if they are under secured, their allowed secured claims are their Petition Date balances, and every dollar of post-petition interest, charge, and attorneys' fee drops out.

51. No evidentiary dispute is required to apply that rule, because the Movants have sworn to their Petition Date balances. Each Motion attaches an Indebtedness Worksheet stating the "[t]otal pre-petition indebtedness of debtor(s) to movant … as of April 26, 2024." The Trustee accepts those figures as stated:

| **Movant** | **Pre-Petition Indebtedness (Movant's Own Affidavit)** | **Amount Claimed as of 8/12/2026** |
|---|---|---|
| H2ML, LLC | $168,123.18 | $328,150.39 |
| Jeffrey Mills | $167,280.39 | $345,743.71 |
| Polonio, LLC | $256,061.79 | $433,680.19 |
| **Total** | **$591,465.36** | **$1,107,574.29** |

52. Section 506(b) thus removes $516,108.93 from the amounts upon which the Movants rely. Their allowed secured claims total $591,465.36.

53. The remaining two secured creditors – Lons, LLC and Gira Property, LLC – have not sought relief from the stay. Taking their asserted balances of $238,617.50 (Lons, LLC Claim 29) and $119,309.27 (Gira Property, LLC Claim No. 23) at face value, and without reducing them for post-petition accruals as section 506(b) would require, the seven Properties secure approximately $949,392.13. The stalking horse contract is $1,050,000.00, and remains subject to overbid at auction.

54. There is therefore equity in the Properties, not the absence of it, and the Movants have not carried the burden section 362(g)(1) places upon them. The Trustee reserves all rights to object to the composition and allowance of the Movants' claims under 11 U.S.C. § 502, but no such objection need be resolved to deny the Motions: on the Movants' own sworn figures and their own legal premise, the arithmetic does not support the relief they seek.

**C. Cause Does Not Exist Under Section 362(d)(1), and the Equities Weigh Decisively Against Relief.**

55. "Cause" is not defined in the Bankruptcy Code. It is determined case by case upon the totality of the circumstances, balancing the hardship to the movant against the hardship to the estate and to other creditors. *See In re Gulfstream Crane, LLC*, 2013 WL 12568187, *2 (Bankr. S.D. Fla. 2013).

56. That balance is not close here. The hardship the Movants assert is delay in enforcing liens that will be satisfied from the proceeds of a sale already under contract and set for hearing. The hardship on the other side is the collapse of a sale process assembled over two years and at substantial expense: the loss of the stalking horse contract and of the competitive auction that may exceed it, the forfeiture of the Estate's recovery under section 506(c) for the costs that made the

sale possible, and prejudice to Lons, LLC and Gira Property, LLC (the two secured creditors who have not sought relief and whose collateral is being marketed as part of the same package).

57. Indeed, the Movants' own conduct forecloses any equitable claim to relief. Neither H2ML nor Polonio took any part in the Menendez Adversary, in which the Trustee established the Estate's title to the very Properties securing their mortgages, and neither contributed a dollar toward it. No Movant insured the Properties, managed them, maintained them, retained a broker, marketed them, or found a purchaser. The Trustee did each of those things, and the Estate paid for all of it. This was not oversight. The Movants' counsel appeared at hearings throughout and sought regular updates. They knew precisely what the Trustee was doing, at whose expense, and for whose benefit; they neither objected to a single one of those measures nor offered to bear any share of them.

58. That conduct bears directly upon relief the Trustee seeks by separate motion. *See* [D.E. 791]. Section 506(c) permits the Trustee to "recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c). In apportioning such expenses, "the bankruptcy court acts as a court of equity and any determination thereof will follow equitable principles." *In re Central Foundry Co.*, 45 B.R. 395, 405 (Bankr. N.D. Ala. 1984) (citation omitted).

59. *Central Foundry* organizes that equitable inquiry around "the degree of action by the lienholder," and charges preservation and sale expenses against secured creditors who requested or agreed to the sale, expressly consented to it, or impliedly consented to it. *Id.* at 406. The Movants' "degree of action" here was that of informed bystanders. Through counsel, they attended hearings, monitored the docket, and requested updates from the Trustee's professionals

while she insured, managed, and marketed their collateral and litigated to clear its title. A secured creditor who watches a trustee preserve its collateral for two years, asks to be kept apprised, and never objects has impliedly consented within the meaning of *Central Foundry*.

60. The Movants then placed themselves within that framework by their own filings. Each told this Court on August 5, 2026 that it "does not object to the sale of the Property," conditioned only upon being paid from the proceeds and upon not being "surcharged in any way." D.E. 768, ¶ 6; D.E. 769, ¶ 6; D.E. 770, ¶ 6.

61. The Trustee does not fully brief the merits of the surcharge here, reserves all rights under section 506(c), and states only this: the Movants may not take the benefit of the Trustee's expenditures while avoiding their cost.[1]

**D. The Motions Continue a Pattern of Conduct for Which These Same Movants Have Already Been Sanctioned.**

62. This Court has already determined that these Movants' bad-faith litigation conduct in this case warrants an award of fees under section 105(a). *See* D.E. 646. The instant Motions continue that bad-faith conduct and the pattern is consistent. The Movants file; they do not prosecute; the motions are denied; they file again. When their renewed motions produced no unrestricted relief, they moved to dismiss the case outright on authority that was factually inapposite, and then did not respond when the Court invited them to be heard on fees. Now, having

---

1 The Movants' posture is not novel. In *Matter of E.J. Management Corp.*, 72 B.R. 421 (Bankr. M.D. Fla. 1987), a secured creditor filed an early motion to lift the automatic stay but "did not vigorously pursue the matter," instead opposing proposed sale contracts because they "did not produce sufficient monies to satisfy the F.D.I.C. claim in full" while urging that efforts to sell continue. When the sale closed, it resisted a surcharge of the broker's and attorney's fees that produced it. The court surcharged the proceeds notwithstanding that the creditor "did not receive a full satisfaction of its secured claim," observing that had it obtained stay relief and foreclosed it "certainly would have had to incur legal expenses in connection with the foreclosure and additional costs with the ultimate sale and disposition of its collateral," including a broker's commission. *Id.* at 423. "It ill behooves the [creditor] at this time to resist a surcharge." *Id.*

contributed nothing to the preservation, administration, or marketing of the Properties, they file a third round of stay-relief motions timed to the sale hearing.

63. Courts within the Eleventh Circuit have long recognized that the persistent advancement of meritless litigation imposes costs on the estate that the offending party, not the estate, should bear. *See In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) (continually advancing groundless and patently frivolous litigation is tantamount to bad faith); *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001); *In re Edgewater Constr. Grp., Inc.*, 665 B.R. 666, 668–69 (Bankr. S.D. Fla. 2024).

64. The Trustee does not suggest that a secured creditor may never seek relief from the stay. She suggests that creditors who abandoned their first motions for want of prosecution, who were sanctioned for a bad faith attempt to dismiss this case, who contributed nothing to the preservation of the collateral they now seek to seize, and who waited until the eve of a sale hearing to move again, have not come to this Court in good faith.

**E. The Trustee Is Entitled to Her Fees and Costs Under Section 105(a).**

65. Section 105(a) authorizes the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a). That authority includes the award of attorneys' fees where a party's conduct has imposed unnecessary costs upon the estate or interfered with the orderly administration of the case. *See In re Edgewater Constr. Grp., Inc.*, 665 B.R. at 668–69; *In re Lyubarsky*, 615 B.R. 924, 934 (Bankr. S.D. Fla. 2020).

66. This Court exercised that authority against these same Movants eight months ago. *See* D.E. 646. The Estate should not be required to bear the cost of responding to a third round of

the effectively the same relief, sought on the same papers, by parties who have contributed nothing to the administration of this case and who did not disclose their history to the Court.

67. The Trustee therefore requests that, upon denial of the Motions, the Court reserve jurisdiction to determine the amount of the Trustee's reasonable attorneys' fees and costs incurred in preparing this Response and attending related hearings, to be awarded against the Movants jointly and severally, upon submission of a memorandum of law consistent with the procedure the Court employed at D.E. 398, D.E. 399, and D.E. 646.

**WHEREFORE**, the Trustee respectfully requests that the Court enter an Order (i) denying the Motions in their entirety; (ii) reserving jurisdiction to determine and award the Trustee's reasonable attorneys' fees and costs incurred in opposing the Motions, against the Movants jointly and severally, pursuant to 11 U.S.C. § 105(a); (iii) confirming that the Trustee's rights under 11 U.S.C. § 506(c) are reserved in all respects; and (iv) granting such other and further relief as the Court deems just and proper.

Dated: August 21, 2026

Respectfully submitted,

**DUNN LAW, P.A.**
*Counsel for Marcia T. Dunn, Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Tel: 786-433-3866
Fax: 786-260-0269
akapai@dunnlawpa.com

By: */s/ Amrit S. Kapai*
Amrit S. Kapai, Esq.
Florida Bar No. 1032794

**CERTIFICATE OF SERVICE**

I CERTIFY that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on this 21st day of August, 2026, upon all registered users in this case.

By: */s/ Amrit S. Kapai*
Amrit S. Kapai, Esq.
Florida Bar No. 1032794

# EXHIBIT "A"

Filing # 240043845 E-Filed 01/22/2026 11:23:49 AM
NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR MIAMI-DADE COUNTY, FLORIDA

JEFFEREY MILLS,

Plaintiff

CASE NO.: 2023-024643-CA-01

v.

CITY TRUST INVESTMENTS, LLC,
HECTOR SERRANO and MIRIAN
SERRANO, et. al.,

Defendants.
___________________________________

HECTOR SERRANO and MIRIAN
SERRANO,

Counter-Plaintiffs,

v.

JEFFEREY MILLS,

Counter-Defendant.
___________________________________/

**PLAINTIFF'S NOTICE OF FILING**

Plaintiff/Counter-Defendant, Jefferey Mills, by and through undersigned counsel and pursuant to the Florida Rules of Civil Procedure, 28 U.S.C.A. § 1746 and the Settlement Agreement entered into with Defendants/Counter-Plaintiffs Hector and Mirian Serrano, hereby gives notice of filing the attached Declaration as to Default Under Settlement Agreement, on the date referenced below.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Courts by using the eFiling Portal, and that a copy was served via Electronic Mail on this **January 22, 2026** to: Law Offices of Damian G. Waldman, P.A., damian@dwaldmanlaw.com; sabrina@dwaldmanlaw.com; service@dwaldmanlaw.com; Manuel J. Mari, P.A., manuel@manueljmaripa.com;

assistant@manueljmaripa.com; ada@manueljmaripa.com; assistant-agl@manueljmaripa.com. and Dunn Law, P.A., akapai@dunnlawpa.com; rbasnueva@dunnlawpa.com; dblansky@dunnlawpa.com; michael.dunn@dunnlawpa.com.

*/s/ Paula Levy Parkes*
PAULA LEVY PARKES, ESQ.
Florida Bar No.: 0117031
**Wolfe & Wyman LLP**
301 East Las Olas Blvd., Suite 200
Fort Lauderdale, FL 33301
Telephone No. (954) 904-3990
Facsimile No. (949) 475-9200
Counsel for Plaintiff
Designated Email Addresses:
plparkes@ww.law; ybenito@ww.law;
FTLpleadings@ww.law

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

**DECLARATION AS TO DEFAULT UNDER SETTLEMENT AGREEMENT**
(28 U.S.C.A. § 1746)

1. The undersigned is co-counsel for the Plaintiff/Counter-Defendant in the instant lawsuit.

2. On or about July 23, 2025 ("Effective Date"), the Plaintiff/Counter-Defendant entered into a Mediated Settlement Agreement ("MSA") with Defendants/Counter-Plaintiffs, Hector and Mirian Serrano.

3. The MSA required the Serranos to pay a sum certain (the "Settlement Payment") 120 days from the Effective Date of the MSA (the "Payment Deadline"), failing which the Serranos expressly stipulated and agreed to waive all of their claims and defenses in the instant case and submit to a Consent Final Judgment of Foreclosure, as to the mortgage which forms the basis of the instant lawsuit.

4. The Serranos failed to pay the Settlement Payment by the Payment Deadline.

5. On three (3) separate occasions, upon the Serranos' request, the Plaintiff/Counter-Defendant agreed to extend the Payment Deadline, in a good faith effort to enable the Serranos to fully perform.

6. In consideration for the final extension, the Serranos and their counsel expressly re-affirmed they would not contest the entry of Plaintiff/Counter-Defendant's Consent Final Judgments of Foreclosure, by virtue of the attached Exhibit "A".

7. The Serranos did not tender the Settlement Payment by the Payment Deadline, as extended, and are now in default under the MSA.

**I, Paula Levy Parkes, co-counsel for the Plaintiff/Counter-Defendant, hereby declare, certify, verify and state, under penalty of perjury that the foregoing is true and correct.**

Executed on January 22, 2026.

PAULA LEVY PARKES, ESQ.
Florida Bar No.: 0117031
**Wolfe & Wyman LLP**
301 East Las Olas Blvd., Suite 200
Fort Lauderdale, FL 33301
Telephone No. (954) 904-3990
Facsimile No. (949) 475-9200
Counsel for Plaintiff
Designated Email Addresses:
plparkes@ww.law; ybenito@ww.law;
FTLpleadings@ww.law

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

# EXHIBIT "A"

NOT AN OFFICIAL COPY - PUBLIC ACCESS - NOT AN OFFICIAL COPY - PUBLIC ACCESS

MANUEL J. MARI, P.A.
ATTORNEYS AT LAW
11120 NORTH KENDALL DRIVE, SUITE 201
MIAMI, FLORIDA 33176
www.manueljmaripa.com

MANUEL J. MARI, ESQ.*
*Florida Supreme Court Certified Circuit Civil Court Mediator

ADA G. LLERENA, ESQ.*†
*Florida Supreme Court Certified Family, County & Circuit Civil Court Mediator
†Of Counsel

TELEPHONE: (305) 279-3140
FACSIMILE: (305) 279-3142
EMAIL1: manuel@manueljmaripa.com
EMAIL2: ada@manueljmaripa.com

January 12, 2026

**VIA EMAIL ONLY: plparkes@ww.law**

Paula Levy Parkes, Senior Counsel
WOLFE & WYMAN LLP
301 E. Las Olas Blvd., Suite 200
Fort Lauderdale, FL 33301

RE: Serrano Settlement Extension

Dear Ms. Parkes:

This will confirm that our clients, Hector S. Serrano and Mirian Serrano, have agreed not to contest the entry of a Final Judgment of foreclosure in each of the pending cases should the payment of the settlement funds not be tendered to your clients by Thursday, January 15, 2026, at 5:00 p.m. Mr. and Mrs. Serrano have indicated their assent to the submission of this confirmation by their signatures below.

Very truly yours,

Manuel J. Mari

MANUEL J. MARI, ESQ.
manuel@manueljmaripa.com
ADA G. LLERENA, ESQ.
ada@manueljmaripa.com

MJM/ss

**We, Hector S. Serrano and Mirian Serrano, hereby consent to the above stipulation on this 12th day of January, 2026.**

Hector Serrano
**Hector S. Serrano**

Mirian Serrano
**Mirian Serrano**