**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

In re:
CITY TRUST INVESTMENTS LLC, LORETA INVESTMENTS, LLC, GAIN 11 INVESTMENTS, LLC, 14445 SW 289 ST LLC; AND CITYWIDE PROPERTY MANAGEMENT LLC,

Debtors.
_________________________/

Case No.: 24-14100-PDR
(substantively consolidated)

Chapter 7

**CHAPTER 7 TRUSTEE'S SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO APPROVE SALE OF PROPERTIES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

Marcia T. Dunn, solely as Chapter 7 Trustee ("Trustee") of the consolidated bankruptcy estate of City Trust Investments, LLC, *et al.*, by and through undersigned counsel, hereby submits this Supplemental Brief in further support of the *Chapter 7 Trustee's Motion for Entry of Order (I) Approving Bidding Procedures in Connection with the Sale of Certain Real Properties of the Estate, (II) Approving the Stalking Horse Purchaser and Related Purchase and Sale Agreement, (III) Scheduling an Auction, if Necessary, (IV) Setting a Final Sale Hearing, (V) Approving the Sale of the Properties Free and Clear of All Liens, Claims, Encumbrances, and Interests, with Such Liens to Attach to Sale Proceeds, and (VI) Granting Related Relief* [D.E. 764] (the "Sale Motion"),[1] and states as follows:

**BACKGROUND**

1. Through the Sale Motion, the Trustee seeks authority to sell the seven real properties identified therein (collectively, the "Properties") pursuant to 11 U.S.C. § 363, free and

[1] All capitalized terms used in this Supplemental Brief shall have the meanings ascribed to them in the Sale Motion.

clear of liens, claims, encumbrances, and interests. The Properties are encumbered by mortgage liens in favor of Lons LLC ("Lons"), Gira Property LLC ("Gira"), Polonio, LLC ("Polonio"), H2ML, LLC ("H2ML"), and Jeffrey Mills ("Mills," and collectively with Lons, Gira, Polonio, and H2ML, the "Secured Creditors"). H2ML, Polonio, and Mills are referred to collectively as the "Objecting Secured Creditors."

2. The Trustee seeks to sell the Properties with all valid liens attaching to the applicable sale proceeds in the same validity, priority, and extent as existed against the Properties immediately prior to closing, subject to the Trustee's rights under 11 U.S.C. § 506(c). *See* Sale Motion ¶¶ 18–19 [D.E. 764].

3. The Sale Contract establishes an initial stalking-horse purchase price of $1,000,000.00. The proposed Bid Procedures permit qualified competing bids and, if one or more Qualified Bids are timely received, require the Trustee to conduct an auction and present the highest and best bid to the Court for approval at the Sale Hearing. *See* Sale Motion ¶¶ 38–39(d), 44, 47–52 [D.E. 764].

4. On August 26, 2026, the Court held a hearing on the Sale Motion, during which it requested supplemental briefing regarding the statutory basis under 11 U.S.C. § 363(f) for the proposed sale free and clear of all interests.

5. As set forth below, the proposed sale is authorized under § 363(f)(4) because bona fide disputes exist concerning the amount and extent of interests asserted against the Properties. The proposed sale is also independently authorized under § 363(f)(3) because the Purchase Price exceeds the aggregate value of the liens encumbering the Properties as that value is determined under 11 U.S.C. § 506(a).

**A. The Sale is Authorized Under 11 U.S.C. § 363(f)(4) Because the Secured Interests are Subject to Bona Fide Dispute.**

6. Section 363(f)(4) permits a trustee to sell estate property free and clear of an interest where "such interest is in bona fide dispute." 11 U.S.C. § 363(f)(4). The provision allows liquidation to proceed without awaiting the final resolution of disputed interests. *In re Gulf States Steel, Inc. of Ala*., 285 B.R. 497, 507 (Bankr. N.D. Ala. 2002) (explaining that § 363(f)(4) prevents liquidation of estate assets from being delayed while disputes concerning asserted interests are litigated); *In re TLFO, LLC,* 572 B.R. 391, 430 (Bankr. S.D. Fla. 2016) (authorizing a sale free and clear of a disputed ownership interest in intellectual property without first resolving whether the debtor or a third party owned the property).

7. A bona fide dispute exists where there is an objective basis for either a factual or legal dispute concerning the asserted interest. *Gulf States Steel*, 285 B.R. at 507. *In re BAMC Dev. Holding*, LLC, No. 8:23-cv-2939-CEH, 2025 WL 770521, at *17 (M.D. Fla. Mar. 11, 2025) (affirming the existence of a bona fide dispute concerning an option interest where the record raised factual and legal questions regarding the assignment, exercise, and enforceability of the option). The trustee bears the burden of demonstrating that such an objective dispute exists. *Gulf States Steel*, 285 B.R. at 507; *In re MMH Auto. Grp., LLC*, 385 B.R. 347, 369 (Bankr. S.D. Fla. 2008). A mere or conclusory denial of the validity or amount of an asserted interest is insufficient. *In re Bimini Island Air, Inc*., 370 B.R. 408, 412–13 (Bankr. S.D. Fla. 2007) (applying the objective standard and rejecting subjective belief or a conclusory denial as sufficient grounds for a bona fide dispute).

8. The Court need not resolve the underlying dispute or determine its probable outcome. It need only determine that an objectively grounded dispute exists. *BAMC Dev. Holding*, 2025 WL 770521, at *17 (explaining that the court's inquiry concerns the existence of the dispute,

not which party will ultimately prevail); *In re Int'l Oil Trading Co., LLC*, 545 B.R. 336, 340 (Bankr. S.D. Fla. 2016) (holding that the court need not resolve the underlying dispute or predict its probable outcome); *TLFO*, 572 B.R. at 430 (authorizing a sale without first resolving the parties' competing ownership claims).

9. Moreover, the disputed "interest" need not concern the existence or validity of the lien itself. A dispute concerning the amount or value of the creditor's secured interest may also satisfy § 363(f)(4). *Gulf States Steel*, 285 B.R. at 507–08 (authorizing a sale free and clear of tax liens where objections to the assessed values created a dispute concerning the amount of taxes secured by the liens); *In re Lee*, No. 19-71337-JTL, 2024 WL 478060, at *3–4 (Bankr. M.D. Ga. Feb. 7, 2024) (authorizing sale under 363(f)(4) because the value of secured creditor's lien was in a bona fide dispute and disposition of the property of the estate should not be delayed by the litigation to resolve the creditor's current interest in the Debtor's property). Here, the record establishes multiple objective disputes concerning the amounts and extent of the Secured Creditors' interests.

10. First, the pending *Motion for Entry of Order Determining and Allowing Surcharge Against Sale Proceeds Under 11 U.S.C. § 506(c)* [D.E. 791] (the "Surcharge Motion") creates an objective dispute concerning the extent of the Secured Creditors' recovery from the Properties and sale proceeds. The Trustee seeks to surcharge the collateral in the amount of $545,458.92 for reasonable and necessary costs incurred in preserving and disposing of the Properties for the Secured Creditors' benefit. *See* Surcharge Motion ¶¶ 32–35 [D.E. 791]. The Objecting Secured Creditors dispute the surcharge and contend that their asserted claims should instead be paid in full at closing. *See* H2ML Limited Objection ¶¶ 5–6 [D.E. 768]; Polonio Limited Objection ¶¶ 5–6 [D.E. 769]; Mills Limited Objection ¶¶ 5–6 [D.E. 770]. The dispute is therefore not a conclusory

denial or an unsupported attempt to manufacture a dispute. It is formally pending and supported by detailed evidence identifying the costs incurred, the Properties to which those costs are attributable, and the quantifiable benefits conferred upon the Secured Creditors.

11. *Lee* and *Gulf States Steel* support that conclusion. In *Lee*, the mortgage itself was undisputed, but disagreements concerning the loan balance and particular charges included in the payoff placed the value of the creditor's interest in bona fide dispute. 2024 WL 478060, at *3–4. Similarly, *Gulf States Steel* held that objections affecting the amount secured by otherwise valid tax liens satisfied § 363(f)(4). 285 B.R. at 507–08. The Surcharge Motion presents an analogous dispute. If allowed, the surcharge will reduce the proceeds available for distribution to the Secured Creditors and thereby determine the extent of their recoverable interests in those proceeds. Because § 363(f)(4) requires only an objective dispute concerning the amount or value of an asserted interest, the Court need not adjudicate the Surcharge Motion before authorizing the sale. *See Lee*, 2024 WL 478060, at *3–4; *Gulf States Steel*, 285 B.R. at 507–08.

12. Second, a bona fide dispute exists concerning the amounts secured by the liens of H2ML, Polonio, and Mills. Their proofs of claim assert secured claims totaling $591,465.36: H2ML Claim No. 5 in the amount of $168,123.18, Polonio Claim No. 1 in the amount of $256,061.79, and Mills Claim No. 2 in the amount of $167,280.39. Their August 2026 affidavits, however, assert current balances totaling $1,107,574.29—an increase of $516,108.93, or approximately *87%*, above their filed claims. *See* D.E. 777–2, 779–2, and 780–2.

13. The asserted increases include $266,285.24 in attorneys' fees and costs and $93,752.13 in amounts identified only as 'corporate advances.' Specifically, H2ML asserts $94,544.98 in attorneys' fees and costs and $26,280.41 in corporate advances; Polonio asserts $69,715.48 in attorneys' fees and costs and $31,077.79 in corporate advances; and Mills asserts

$102,024.78 in attorneys' fees and costs and $36,393.93 in corporate advances. The affidavits state aggregate figures but do not attach invoices, transaction-level records, or other documentation establishing what services or advances comprise those amounts, whether they were authorized by the applicable loan documents, whether they were reasonable, or whether they are allowable and secured under 11 U.S.C. §§ 502 and 506.[2]

14. The Objections challenge, among other things, the allowance and secured status of the asserted postpetition attorneys' fees, costs, corporate advances, charges, and other amounts exceeding the filed claims. Those objections are not conclusory denials. They identify specific components of the asserted balances for which the Objecting Secured Creditors must establish contractual authorization, reasonableness, and entitlement under §§ 502 and 506. The resulting disputes directly affect the amounts secured by the liens and therefore the value and extent of the Objecting Secured Creditors' interests in the Properties and sale proceeds.

15. Accordingly, the Secured Creditors' interests are subject to bona fide dispute, and § 363(f)(4) authorizes the proposed sale free and clear.

**B. The Sale Is Independently Authorized Under 11 U.S.C. § 363(f)(3) Because the Purchase Price Exceeds the Value of the Liens Encumbering the Properties.**

16. Section 363(f)(3) permits a trustee to sell property free and clear of an interest where "such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property." 11 U.S.C. § 363(f)(3).

17. By its terms, § 363(f)(3) measures the *value* of the liens, not their amount. That distinction is deliberate and controls the analysis. Courts giving the word its ordinary meaning hold that the "aggregate value of all liens" is the value of the lienholders' interests as determined

---

[2] Contemporaneously with this Supplemental Brief, the Trustee is filing objections to the Objecting Secured Creditors' asserted claim amounts (collectively, the "Objections").

under 11 U.S.C. § 506(a) — the economic value the liens actually carry against the collateral — rather than the face amount of the underlying debt. *In re Beker Indus. Corp.*, 63 B.R. 474, 476 (Bankr. S.D.N.Y. 1986) (the price must be "equal to or greater than the aggregate value of the liens asserted against it, not their amount"); *In re Bos. Generating, LLC*, 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010) (value determined in accordance with § 506(a)).

18. Bankruptcy courts within this Circuit have adopted that reading. In *In re Flyboy Aviation Properties, LLC*, 501 B.R. 828 (Bankr. N.D. Ga. 2013), the court approved a sale free and clear because "the value of the liens, as determined by section 506 of the Bankruptcy Code, is being paid," and therefore "section 363(f)(3) provides authority for the Debtor to sell the Property." *Id.* at 834. The court in *In re Bay Circle Properties, LLC*, No. 15-58440-WLH, 2017 WL 639769 (Bankr. N.D. Ga. Feb. 14, 2017), reached the same conclusion and gave two reasons the Trustee respectfully submits are dispositive: first, "Section 363(f)(3) talks about the 'value' of the liens, not the amount of the liens"; and second, "if Section 363(f)(3) were held to require payment in full of the face amount of all liens, there would seem to be little reason for the provision," because "[a] sale which results in the payment in full of the liens, of course, is free and clear of them." *Id.* at *3. A construction that renders a statutory subsection superfluous should be avoided.

19. The Trustee acknowledges that courts elsewhere have read "value" to mean the face amount of the secured debt, and that no binding Eleventh Circuit decision resolves the question. *In re Levitt & Sons, LLC*, 384 B.R. 630, 648 (Bankr. S.D. Fla. 2008) (recognizing the divergence and resolving the sale before it under § 363(f)(5)). The Trustee submits that the economic value construction is the better reading for the textual and structural reasons stated in *Bay Circle*, and that it is the construction the record here calls for.

20. Section 506(a) supplies the measure of value, and it directs that value be "determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C. § 506(a)(1). Here the purpose of the valuation is the proposed disposition itself, and the value of the Properties is established by an arm's-length, market-tested Purchase Price of $1,000,000.00 procured by the Trustee's retained broker after extensive marketing. *See* Sale Motion ¶¶ 36–39 [D.E. 764].

21. Moreover, a surcharge allowed under § 506(c) is not paid from the estate's unencumbered assets. It is an assessment against the secured party's collateral, recovered from the proceeds of the collateral before the secured creditor receives anything. *See* 11 U.S.C. § 506(c); *In re Nuclear Imaging Sys., Inc.*, 270 B.R. 365 (Bankr. E.D. Pa. 2001) (§ 506(c) expenses "are paid first out of the proceeds of the sale, before a secured creditor is paid").

22. Congress said as much in the text. Section 506(b) conditions an oversecured creditor's entitlement to postpetition interest and charges on the collateral having a value, "after any recovery under subsection (c) of this section," greater than the amount of the claim. 11 U.S.C. § 506(b). That language is a direct instruction that a § 506(c) recovery is deducted from the value of the collateral before the value of the secured creditor's interest is determined. The same deduction applies when § 506(a) is used to measure the value of a lien for purposes of § 363(f)(3).

23. Applying that measure, the Purchase Price exceeds the aggregate value of the liens by a wide margin:

| | |
|---|---|
| Purchase Price | $1,000,000.00 |
| Less § 506(c) surcharge sought [D.E. 791] | ($545,458.92) |
| **Aggregate value of the Secured Creditors' liens** | **$454,541.08** |

24. The Purchase Price of $1,000,000.00 therefore exceeds the $454,541.08 aggregate value of the liens, and § 363(f)(3) is satisfied. Indeed, the entire balance of the net proceeds

remaining after the surcharge will be held for and distributed to the Secured Creditors in their existing priority, so the full economic value of their liens will be paid. *See Flyboy*, 501 B.R. at 834.

25. Significantly, this analysis does not depend on resolving the parties' dispute over the amounts of the Secured Creditors' claims. Because the value of a lien under § 506(a) cannot exceed the value of the collateral securing it, the aggregate value of the liens is $454,541.08 whether the Court measures the underlying obligations by the $949,392.13 reflected in the filed proofs of claim or by the substantially larger balances the Secured Creditors have more recently asserted. The § 363(f)(3) inquiry is satisfied either way.

26. The Purchase Price may also increase. The $1,000,000.00 figure is only the initial stalking-horse bid; the Bid Procedures permit qualified competing bids and, if one or more Qualified Bids are timely received, require an auction and presentation of the highest and best bid for approval. *See* Sale Motion ¶¶ 44, 47–52 [D.E. 764]. Any overbid enlarges the margin by which the Purchase Price exceeds the value of the liens.

27. Accordingly, to the extent the Court grants the relief requested in the Surcharge Motion, the aggregate value of the liens encumbering the Properties is $454,541.08, the Purchase Price substantially exceeds that amount, and § 363(f)(3) independently authorizes the proposed sale free and clear.

**WHEREFORE,** for the reasons set forth above and in the Sale Motion, Marcia T. Dunn, as Chapter 7 Trustee of the consolidated bankruptcy estate of City Trust Investments LLC, respectfully requests that the Court determine that the proposed sale of the Properties free and clear of liens, claims, encumbrances, and interests is authorized under 11 U.S.C. §§ 363(f)(4) and

363(f)(3), approve the Sale Motion and the relief requested therein, and grant such other and further relief as the Court deems just and proper.

Dated: September 8, 2026

Respectfully submitted,
**DUNN LAW, P.A.**
*Counsel for Marcia T. Dunn, as Chapter 7 Trustee*
66 West Flagler Street, Suite 400
Miami, Florida 33130
Tel: 786-433-3866 || Fax: 786-260-0269
Email: akapai@dunnlawpa.com

By: */s/ Amrit S. Kapai*
Amrit S. Kapai, Esq.
Florida Bar No. 1032794

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served via Notice of Electronic Filing (CM/ECF) on September 8, 2026, upon all registered users in this case.

By: /s/ *Amrit S. Kapai*
Amrit S. Kapai, Esq.
Florida Bar No. 1032794